UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**Jane Doe**,
Plaintiff,

**Civil Action No. 1:24-cv-03530-CJN**

v.

**UDC DAVID A. CLARKE SCHOOL OF LAW, et al**.,
Defendants.

# NOTICE OF PRESERVATION OF LEGAL ERROR FOR APPEAL

## I. Failure to Timely Rule on Emergency Motion for Preliminary Injunctive

On March 28, 2025, minutes before the hearing, Plaintiff fainted and struck her head, her third and most serious injury at UDC Law. She was disoriented and unable to mute her phone when instructed. This harm directly and proximately resulted from the Court's failure to adjudicate Plaintiff's Emergency Motion for Preliminary Injunctive Relief in a timely manner. On February 27, 2025, Plaintiff submitted a renewed doctor's letter and formally requested remote access due to concussion-related symptoms. When that request was ignored, Plaintiff fell on March 6 and filed her Emergency Motion the same day, warning of imminent, irreparable harm.

The Court had two full weeks before harm would occur. Spring break ended March 17. Nevertheless, it failed to act. On March 20, Plaintiff was expected to attend two 3-hour in-person classes. Injured again on March 19, she could not attend and has not returned since. The Court's delay made the risk of injury real. On March 28, Plaintiff suffered her most serious injury, which

required an Emergency Room visit and significantly worsened her condition, now threatening her ability to graduate. These injuries were not only foreseeable, they were foreseen. Plaintiff's pleadings warned that another fall was likely. Defendant's refusal to engage in the interactive process, and the Court's inaction, left that danger unchecked. The ADA, Section 504, and DCHRA mandate prompt, effective accommodations. See 28 C.F.R. § 35.130(b)(7); 29 U.S.C. § 794; D.C. Code § 2–1402.41. Courts grant emergency relief to prevent these very harms. See Jackson v. District of Columbia, 826 F. Supp. 2d 109, 114 (D.D.C. 2011).

This delay was not administrative, it was a failure to protect a disabled litigant. Plaintiff suffered lasting harm. Both Defendant and the Court are direct and proximate causes of the March 28 injury which worsened her brain injury, leaving her unable to speak clearly at times and jeopardizing her graduation. These injuries now exceed the original car accident. This outcome was preventable.

**II. Court Failed to Require Legal Justification for Denial of Accommodation**

Despite questioning the sufficiency of Plaintiff's doctor's letter, the Court did not require the Defendant to satisfy its legal burden under federal disability law. Under the ADA and Section 504, a public institution may only deny a requested accommodation if it establishes that the accommodation would either:

- Fundamentally alter the course; or
- Impose an undue financial or administrative burden., and
- Must have Effective Communication.

See 28 C.F.R. § 35.130(b)(7); *D.L. v. District of Columbia,* 450 F. Supp. 2d 11, 17–18 (D.D.C. 2006). At no point did the Defendant assert, let alone prove, either of the legally required justifications. Instead, the Defendant and Court relied on an unqualified opinion from Demetrius Keller, a social worker with no medical training, who dismissed the recommendations of Plaintiff's treating doctor without medical basis or consultation. Courts defer to the medical judgment of the treating physician rather than the defendant's lay assumptions about disability. -*Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 818 (9th Cir. 1999).

**Court disregards Paintiff detailed doctor's note (Exhibit D):**

> *"The school is entitled to understand in more detail from you what's going on than a one-paragraph doctor's note with no comment." Unofficial Hearing Transcript, Mar. 28, 2025*

**"Where documentation is sufficient on its face, the institution must provide the accommodation or show why it cannot."** - *Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001). No denial letter was issued, no email or communication was provided, **just ignored**. Plaintiff only **learned of the denial through pleadings.** This is not Effective Communication! The law is clear: an accommodation request cannot be denied arbitrarily or based on personal disbelief from an uneducated untrained social worker. Defendant's failure to follow established Black Letter Law, combined with the Court's failure to hold them accountable. Worse still, the Court turned a blind eye to this misconduct and subjected Plaintiff, at her most vulnerable, following a head injury, to further harm simply for asserting her civil rights through this lawsuit.

### III. Improper Burden Shift to Disabled Student.

> Court- *"Seems to me that you're doing a very inadequate job of informing them of your situation and making the specific request that you want…" - Unofficial Hearing Transcript, Mar. 28, 2025.*

**How is this email note clear, - This email was clear in the record - Exhibit D.**

Second Doctors Letter ARC.pdf
278 KB

This is now my fourth time submitting the exact same request, complete with a second doctor's note confirming I need these accommodations. Yet the UDC ARC has blatantly refused to engage in the legally required interactive process, showing clear bias by favoring physical disabilities over mental ones. By ignoring every single request I've made, you've effectively denied me due process under the 14th Amendment and ADA, Section 504, and DCHRA.

Because you never bothered to respond or provide any feedback, I've been left in the dark about what additional documents you supposedly need or what specific issue you have with my request. You've put me in a position where I'm forced to guess how to limit or modify my request. It's embarrassing that I attend a law school that does not follow the law.

To make matters worse, I've now **sustained a physical disability from a car accident, and the pain I'm in directly impacts my ability to sit through a three-hour class**. This affects two classes, Business Organizations Rebecca Rosenberg 6:15-9:15pm and Legal & Bar and Success Foundations 9am - 12pm . Despite this, I'm once again demanding access to the **online class already provided to other students.** It's time for the UDC ARC to do its job, stop the discrimination, and honor your obligation to accommodate my disabilities, both mental and physical—immediately.

The Court repeatedly questioned why Plaintiff failed to comply with Defendant's policy rather than asking why the institution failed to accommodate her in the first place, As a Matter of Law. Under the ADA and Section 504, institutions, not students, bear the burden of initiating and engaging in the interactive process. See 28 C.F.R. § 35.130(b)(7); *Ward v. McDonald*, 762 F.3d 24, 32 (D.C. Cir. 2014).

Plaintiff had submitted emails using clear language, including: "***Please don't ignore me," "Any update," "The law requires an interactive process,"*** and ***"What are my next steps?" - See** Exhibit D.* Despite these good faith efforts, Defendant failed to respond or issue a denial. The

Court and Defendant shifted the burden to the Plaintiff, especially one recovering from a brain injury, or initiate and navigate this process. This was not only contrary to law but severely prejudicial and damaging. ARC's Keller described Plaintiff as having "a pattern of being impatient and unwilling to wait like other students." That quote alone, describing a student with a brain injury seeking urgent accommodations, is emblematic of a hostile and dismissive posture. Calling Plaintiff pushy for repeatedly requesting legally protected accommodations shows she was attempting to engage in the interactive process, which the Defendant refused. This only underscores the institution's bad faith. The ADA, Section 504, and DCHRA require schools to be proactive. The burden is not on the disabled student to navigate a broken system.

**IV. Permanent Disability Must Re-Certify 2 -3 times a year.**

**Court finds no burden on you to repeat accommodation registration—even after injury and changed conditions:**

The Court strongly urged the Plaintiff to comply with UDC's semesterly re-certification process as if the Defendant had a legal right to disregard well-settled Supreme Court precedent:

- Plaintiff's permanent disability status;
- A 2022 court-approved settlement agreement; and
- DOJ and Department of Education guidance stating that re-verification is not required for permanent disabilities.

> *"I haven't heard any good reason today or in the paper why you….. still can't register your accommodation into a course exam schedule and given the deadline of April 1st…"- Unofficial Hearing Transcript, Mar. 28, 2025*

This reflects a clear legal error. According to DOJ ADA Guidance (2023): "[Institutions] shall not require individuals with permanent disabilities to re-verify their disability unless the

condition has changed." This is not optional guidance. Under Supreme Court precedent, *Chevron U.S.A. Inc. v. NRDC,* 467 U.S. 837 (1984), agency interpretations such as those from DOJ and OCR must be given controlling weight. Further, only a **jury may weigh conflicting facts or disregard credible evidence.** A judge may not do so unilaterally. Plaintiff invested significant financial resources to secure a accommodations through legal representation in 2022. For the Court now to disregard that settlement, while upholding Defendant's false claim that Plaintiff's accommodations must be re-verified each semester, **(2 or 3 times a year)** imposes a financial and legal burden on the Plaintiff that is wholly unsustainable and legally unjustified. If this logic were followed, Plaintiff would have to hire an attorney each semester to obtain accommodations, defeating the very purpose of the ADA and Section 504, which exist to prevent barriers for students with disabilities. Such a policy is clearly and demonstrably "overall burdensome." Futhermore, Defendant falsely claims that a 2022 emergency injunction settlement agreement for accommodations, entered without a filed complaint, somehow triggers *res judicata*. Yet in the same breath, they deny the existence of any settlement agreement when it comes to enforcing accommodations. That's not law, it's a misrepresentation to the Court. And now the Court is not just allowing this contradiction, it is actively helping defendant get away with it.

**V. Improper Fact-Finding and Acceptance of False Declarations**

The Defendant submitted knowingly false declarations from a member of the bar, yet the Court did not compel correction of the record as required by law. Plaintiff filed a Second Motion for Emergency Sanctions, a Motion to Strike the Declarations, and a Motion to Refer Dean Brookes for Criminal Prosecution under 18 U.S.C. §§ 1621 & 1623. The Defendant offered no response, no withdrawal, no correction, and no explanation, despite recording and filing three

declarations, including one from Dean Brittain, who clearly confirmed that Dean Brookes committed perjury to support this false narrative that I refused to engage in the interactive process. I knew the Defendant would try to induce the Court to commit an illegal error, but I didn't think the Court would fall for it, especially not with this amount of evidence proving the Defendants are liars. Their silence in the face of overwhelming proof constitutes admission.

**VI. Court Accepted Known Falsehoods Regarding Interactive Process**

> Court- *"It seems to me that you are refusing to engage at the level of discourse at the university and school"- - Unofficial Hearing Transcript, Mar. 28, 2025*

This conclusion that directly contradicts Plaintiff's documented February 27 and February 28 emails, which are in the record. In sworn statement, Keller falsely claimed that Plaintiff "refused to respond" to a **February 25, 2025 email.** But that email was not directed to Plaintiff individually it was a mass ARC message about tutoring, not my accommodations. However, Plaintiff did respond **two days later, on February 27**, submitting a second doctor's letter naming specific courses and explaining her need for remote access due to a worsening brain injury. *See Exhibit D.* She followed up again on February 28, documenting failures related to recording accommodations. Keller's statement was knowingly false. The record contradicts it. Plaintiff preserved this in her filings. Attorney Abrams had access to these emails and advanced the falsehood anyway, raising serious perjury issues.

**IV. Bias Against Plaintiff**

The Court displayed clear bias in its handling of Plaintiff's requests and testimony. Despite overwhelming evidence proving the Defendant submitted false declarations, the Court cited those falsehoods as fact and did not question the Defendant on the record about their false

statements, which were outrageous and constituted clear perjury. Instead, the Court redirected blame onto Plaintiff.

Plaintiff was injured disoriented and struggled to talk. Despite this, the Court chastised not Attorney Adams for perjury, not Attorney Brookes for perjury, and not Keller for perjury, but the injured Plaintiff, for *"interrupting"* when she lacked visual cues to know whether the Court had finished speaking. The Plaintiff informed the Court of her medical state at the beginning of the hearing, yet this was disregarded entirely. The Court also disregarded Plaintiff's repeated verbal explanation during the hearing that recertification was *"overall burdensome"* to her disability. This included her repeated efforts to navigate a system that had consistently failed her. The Court ignored binding OCR and DOJ guidance that expressly prohibits repeated re-verification for permanent disabilities, especially when the burden is high and accommodations have already been granted. Witnesses, including Jane Doe 1, testified that they too lost accommodations due to UDC's burdensome and inconsistently applied recertification demands. **Dean Brookes**, in a recorded statement, also acknowledged that the **policy was outdated and unnecessarily difficult.** Nevertheless, the Court **chose to fault Plaintiff for noncompliance** rather than scrutinize the Defendant's conduct or policies. This pattern of conduct reflects not only disregard for Plaintiff's disability but a judicial hostility that undermined her credibility without cause. The Court demonstrated clear bias and failed to act as a neutral arbiter, favoring the Defendant's narrative even in the face of documented falsehoods.

**VIII. Conclusion**

Only a jury may decide whether accommodations, previously granted and reaffirmed by DOJ and OCR, can be revoked. The DOJ's 2023 ADA Guidance clearly states: "[Institutions] shall not require individuals with permanent disabilities to re-verify their disability unless the condition has changed." Plaintiff has found no record of any D.C. jury, or the D.C. Circuit, ever endorsing such a revocation. The Court's interpretation is therefore extremely unlikely to prevail, and Plaintiff will not voluntarily waive her federally protected rights.

**Supplemental Reference to New Medical Evidence**

Plaintiff submits new medical documentation from MedStar dated March 29, 2025, confirming post-concussive symptoms following her collapse at the law school just prior to the hearing. This evidence corroborates prior filings and warnings of foreseeable, irreparable harm. See MedStar Emergency Department Report (Mar. 29, 2025).

Respectfully submitted,

/S/

Jane Doe
Pro Se Plaintiff
4301 50th Street, NW, Suite 300 #1140
Washington, DC 20016
jane.doe2023a@gmail.com
Dated: March 30, 2025

**CERTIFICATE OF SERVICE**

I hereby certify certify that, on March 30, 2025, a copy of the attached (NOTICE OF PRESERVATION OF LEGAL ERROR FOR APPEAL) was filed and served through the court's electronic filing system to: Anessa Abrams aabrams@fordharrison.com FordHarrison LLP 2000 M Street, N.W. Suite 505 Washington, DC 20036.

/S/

____________________

March 30, 2025