**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**JANE DOE**,
Plaintiff,

**Civil Action No. 1:24-cv-03530-CJN**

v.

**UDC DAVID A. CLARKE SCHOOL OF LAW, et al**.,
Defendants.

**PLAINTIFF MOVES TO RECUSE JUDGE CARL J. NICHOLS FOR KNOWING VIOLATIONS OF DISABILITY LAWS THAT CAUSED PLAINTIFF'S TRAUMATIC BRAIN INJURY**

## I. INTRODUCTION

Plaintiff respectfully moves for the immediate recusal of Judge Carl J. Nichols under 28 U.S.C. §§ 455(a) and 144 based on demonstrable bias, hostile treatment of a disabled litigant, and his willful refusal to follow controlling federal disability law, even after being warned that such misconduct would cause catastrophic, life-and-death harm. Despite repeated ADA accommodation requests and documented medical warnings, this Court took no action, allowing UDC's illegal refusal to honor accommodations to result in foreseeable, preventable physical injury. Instead of preparing for graduation ceremonies and celebrations, Plaintiff is in speech therapy, vision therapy, and physical therapy; she attends one medical appointment after another, and now lives with a possibly permanent traumatic brain injury, all caused by this Court's unlawful inaction.

> *"Every word I type causes pain. My brain throbs with every sentence. The screen blurs. My hands tremble. I lose vision. I slur when I speak aloud to reread my own filings. The exertion is so overwhelming that after submitting motions, I often collapse from exhaustion or neurological overload. On May 5 and May 7, I missed critical medical appointments because I was in too much pain to leave bed—**not from my injury alone, but from the injury this Court keeps worsening by making me write instead of rest**. This is not legal access. It is medical cruelty." - Jane Doe.*

The life Plaintiff built has been shattered. The harm was not theoretical or abstract—it was entirely foreseeable, and entirely preventable. Had Judge Nichols followed basic protections required by the ADA, none of this would have happened. Instead, he refused to enforce the law, ignored repeated medical warnings, and enabled the very abuse the ADA was enacted to stop, actions which contribute to the appearance of partiality.

**Judge Nichols openly declared**: *"DOJ guidelines are not law"*

Thus, directly violating 42 U.S.C. § 12134(a), which mandates that *"The Attorney General shall promulgate regulations... which shall be consistent with this chapter and shall be controlling."* Thus, when the Court stated that "DOJ guidance is not the law," it was legally and factually incorrect. That quote alone disqualifies him, as it demonstrates to any reasonable observer a disregard for applicable law favoring one party to disadvantage a marginalize litigate. His unlawful disregard of binding disability protections violated black letter law and confirmed his bias against Plaintiff's rights, safety, and humanity. Such conduct creates a serious risk of bias violating Due Process *Caperton v. A.T. Massey Coal Co.* , 556 U.S. 868, 884 (2009)., and mandates recusal under 28 U.S.C. § 455(a) because his impartiality might reasonably be

questioned *Liteky v. United States,* 510 U.S. 540, 555-56 (1994)., Had Judge Nichols simply followed the law as written, Plaintiff's life would never have been placed in danger. Plaintiff's Emergency Injunction was not adjudicated in a timely manner and was subject to undue delay, despite clear medical warnings that delay could cause catastrophic injury or death. This deliberate inaction, in the face of foreseeable life-threatening harm, displayed deliberate indifference to Plaintiff's disability rights and physical safety, conduct which forms part of a pattern inconsistent with neutrality—in direct violation of the ADA, Section 504, and the Due Process Clause. As a direct result of these unlawful actions, Plaintiff suffered catastrophic, possibly permanent, neurological injury, and was derailed from graduating with honors in May 2025. Immediate recusal is necessary to restore the appearance of justice.

**II. FAILURE TO ADJUDICATE PLAINTIFF'S EMERGENCY INJUNCTION**

On February 27, 2025, Plaintiff submitted a second formal ADA accommodation request to the Defendant, attaching a second doctor's letter warning of the medical dangers of attending extended in-person three-hour lectures, which would dangerously aggravate Plaintiff's existing neck and low back pain caused by a motor vehicle accident. Plaintiff noted this was her "fourth time submitting the exact same request, complete with a second doctor's note confirming I need these accommodations". As detailed in Plaintiff’s February 27, 2025 email and accompanying doctor’s letter, Plaintiff explicitly warned of the risk of brain injury and submitted formal ADA documentation. That record was completely ignored by the Court. (See Exhibit F – February 27, 2025 Emergency ADA Request and Doctor’s Letter.) Despite this, she demanded access to the online class already provided to other students. No response followed. Plaintiff was forced to continue attending classes in person under dangerous conditions. On March 6, 2025, Plaintiff

collapsed during break in her 6:15 p.m. to 9:15 p.m. Business Organizations class. On March 7, 2025, Plaintiff filed an Emergency Motion for Preliminary Injunction ("Emergency Injunction"), asserting that her collapse was directly caused by Defendant's failure to provide the medically necessary accommodations. The Court had a legal duty under the ADA to order "provisional accommodation" to prevent disability discrimination. The ADA requires public entities to provide reasonable accommodations, including temporary measures where urgent action is needed to prevent irreparable harm. Access to courts is a fundamental right under the ADA *Tennessee v. Lane* , 541 U.S. 509, 523 (2004)), and the ADA requires affirmative reasonable accommodations to ensure access *Alexander v. Choate* , 469 U.S. 287, 301 (1985)). Despite having no hearings or proceedings during the critical March 7-15 spring break, the Court failed to rule on Plaintiff's Emergency Injunction, a delay that would have caused no prejudice to Defendant but could have prevented further harm. Insertion 2: After Plaintiff collapsed again after class on March 19, 2025, and filed a pleading warning: "I am an older woman. If I hit my head again, I could die". Even after this life-threatening notice, the Court still refused to act. This deliberate failure to adjudicate the Emergency Injunction violated the ADA, Title II (42 U.S.C. § 12132); the DOJ prompt-resolution regulation (28 C.F.R. § 35.107(b)); Section 504 of the Rehabilitation Act (29 U.S.C. § 794); and Plaintiff's Fifth Amendment Due Process rights to meaningful access to the courts. Judge Nichols' refusal to act not only denied Plaintiff legal protections but directly contributed to her worsening medical condition, leading to further collapse and hospitalization, a result stemming from inaction that reasonably appears non-neutral.

## III. JUDGE NICHOLS'S CONDUCT AT THE MARCH 28, 2025 EMERGENCY HEARING

During the March 28, 2025 emergency hearing, Judge Carl J. Nichols derailed the proceedings by advancing false legal theories never raised by Defendant and ignoring verified medical evidence already in the record. The hearing was held after Plaintiff had collapsed on campus after class. She appeared while visibly impaired, slurring speech, disoriented, and stating: *"I just fainted… I don't remember how to mute the phone."* Yet the Court pressed forward, raising defense arguments not briefed and disregarding Plaintiff's urgent need for accommodation.

### A. Judge Nichols unlawfully argued for a "recertification" rule that exists only under Title I—not Title II.

Defendant raised the "recertification" argument in its filings but notably did not raise it at the hearing. In fact, Defendant said very little during the hearing, perhaps because the hearing was not about past accommodations, but about emergency relief following a recent collapse. Without prompting from Defendant, Judge Nichols inserted an unfounded Title II theory that Plaintiff's accommodation should be denied because she had not "recertified" Plaintiff had submitted four formal accommodation requests, including a February 27, 2025 email attaching a physician's letter explicitly warning that in-person attendance posed a serious risk of  injury. Plaintiff had submitted three separate doctor's notes supporting her request for remote access, one in September 2024, one following a November 2024 ER report second doctor note, and a third doctor note called attached to her February 27 emergency email. Yet ARC, the Defendant, and the Court all claimed Plaintiff had somehow been unclear. That was false. In her email to ARC, Plaintiff explicitly invoked federal and constitutional law, writing that ARC had refused to engage in the ***"legally required interactive process, showing clear bias by favoring physical***

***disabilities over mental ones. By ignoring every single request I've made, you've effectively denied me due process under the 14th Amendment and ADA, Section 504, and DCHRA."***

She also warned that her condition had worsened dramatically:

> ***"I've now sustained a physical disability from a car accident, and the pain I'm in directly impacts my ability to sit through a three-hour class."***

**FORMAL Reasonable Accommodation under the ADA**

**From**
**Date** Thu 2/27/2025 11:07 AM
**To** Butler, Pamela <pamela.butler1@udc.edu>; Keller, Demetrius <demetrius.keller@udc.edu>

1 attachment (278 KB)
Second Doctors Letter ARC.pdf;

This is now my fourth time submitting the exact same request, complete with a second doctor's note confirming I need these accommodations. Yet the UDC ARC has blatantly refused to engage in the legally required interactive process, showing clear bias by favoring physical disabilities over mental ones. By ignoring every single request I've made, you've effectively denied me due process under the 14th Amendment and ADA, Section 504, and DCHRA.

Because you never bothered to respond or provide any feedback, I've been left in the dark about what additional documents you supposedly need or what specific issue you have with my request. You've put me in a position where I'm forced to guess how to limit or modify my request. It's embarrassing that I attend a law school that does not follow the law.

To make matters worse, I've now **sustained a physical disability from a car accident, and the pain I'm in directly impacts my ability to sit through a three-hour class**. This affects two classes, Business Organizations Rebecca Rosenberg 6:15-9:15pm and Legal & Bar and Success Foundations 9am - 12pm . Despite this, I'm once again demanding access to the **online class already provided to other students.** It's time for the UDC ARC to do its job, stop the discrimination, and honor your obligation to accommodate my disabilities, both mental and physical—immediately.

Despite this, Defendant falsely told the Court that Plaintiff had not been clear. The Court then echoed that lie, ignoring the fact that Plaintiff had sent three distinct medical letters by February 27 alone, and had requested the exact same accommodation four times in writing. This was not a

failure to follow procedure. It was a failure by ARC, the Defendant, and the Court to acknowledge plain, documented facts. That email was in the record before the March 28, 2025 emergency hearing. Judge Nichols never addressed it. Instead of responding to the emergency documentation, he redirected the hearing to a procedural issue: whether Plaintiff had "recertified" with the school's disability offices. This issue had never been raised by the Defendant, had no bearing on the request, and had already been satisfied multiple times.

MedStar Health

To whom it may concern,

I am writing this letter on behalf of my patient, _ who is currently under my care for neck/low back pain s/p MVA. Due to the accident, attending in-person lectures for extended durations—such as the three-hour lectures—can be difficult and exacerbate symptoms. It would be recommended that the patient can be reasonably accommodated for in person lectures to improve academic participation and medical status.

Sincerely,

Wenxuan Ji, PT, DPT

Physical therapist

What the Court ignored entirely was that Plaintiff had been approved for other accommodations since 2022 under a prior court settlement. The emergency remote access request was a separate issue, medically urgent, and repeatedly documented since 2023. It was not denied based on merit or need, but on a discriminatory policy that required disabled students to recertify **up to six times per year,** once with UDC and once with the law school each semester, including summer. No other school in America does this and "***Not all UDC Law students were not subject to this burden I was not until I filed this lawsuit***." It was used to target Plaintiff. Under 28 C.F.R. §

35.130(b)(7), public institutions may not impose unnecessary administrative burdens to deny accommodations. Requests must be evaluated based on the individual's current condition—not irrelevant procedural barriers. *See Wright v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 831 F.3d 64, 72 (2d Cir. 2016). Internal policies cannot override federal protections. *See Barnett v. U.S. Air, Inc.*, 535 U.S. 391, 397 (2002). The Court disregarded that record completely. Instead, at the March 28, 2025 emergency hearing, Judge Nichols stated:

> ***"It's quite possibly the kind of accommodation that would have been granted had Ms. Doe done all the things that she should have… but we're here now."***

That statement was factually false. Plaintiff had complied with every requirement: she submitted documentation again and again, received ARC approval in Spring 2025, and updated her medical records after each worsening event. The only thing that changed was her condition, she now required immediate remote access after a traumatic brain injury. Judge Nichols misrepresented her compliance and used that falsehood to justify denial.

The hearing itself was critical. Plaintiff's injuries had worsened dramatically. The February 27, 2025 doctor's letter explicitly warned that attending in-person classes could lead to permanent injury. This was a documented medical emergency requiring urgent protection under federal disability law. *See T.W. v. N.Y. State Bd. of Law Exam'rs*, 996 F. Supp. 163, 170 (S.D.N.Y. 1998); *Doe v. Bd. of Regents of Univ. of Neb.*, 280 F. Supp. 2d 1074, 1087 (D. Neb. 2003). Judge Nichols's reliance on a recertification excuse, already satisfied and never required of other students, demonstrates a complete failure to review the record. He ignored ARC emails, prior approvals, the medical timeline, and the distinction between long-standing accommodations and the emergency request. This was not a legal error. It was judicial misconduct. A judge may not

substitute invented legal theories for documented medical need. *See Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 886 (2009); *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). By injecting a defense not raised by the Defendant, disregarding Plaintiff's medical documentation, and falsely claiming noncompliance, Judge Nichols did not act as a neutral adjudicator. He acted as an advocate for the Defendant. That is a clear violation of judicial neutrality requiring disqualification under 28 U.S.C. § 455(a).

**B. Judge Sua Sponte Legal Errors**

Judge Nichols repeatedly inserted other defense theories not raised by Defendant, violating fundamental rules of adversarial process.

| Theory Used to Deny Relief | Raised by Defendant at Hearing | Raised by Judge Nichols at Hearing | Legal Violation |
|---|---|---|---|
| 1. Recertification required | X | ✓ | 28 C.F.R. § 35.130(b)(7); *United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020) |
| 2. 2022 settlement "no longer applies" | X | ✓ | *Greenlaw v. United States*, 554 U.S. 237 (2008) |
| 3. Plaintiff failed to communicate | X | ✓ | 28 C.F.R. § 35.160(b)(2) |
| 4. Medical documentation insufficient | X | ✓ | *Bragdon v. Abbott*, 524 U.S. 624, 641 (1998) |
| 5. DOJ guidance "not the law" | X | ✓ | 42 U.S.C. § 12134(a); *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984); *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) |
| 6. Plaintiff to blame for registration | X | ✓ | 28 C.F.R. § 35.160(b)(1)(2); *Tennessee*, 541 U.S. at 523 |

This conduct violated *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579–81 (2020), which condemned judicial injection of unargued defenses. It also violated *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 884 (2009), by abandoning neutrality in a disability case.

**C. Hostile Treatment and Discriminatory Remarks**

Judge Nichols's conduct worsened. He blamed Plaintiff directly, stating:

***"You have not done a very good job of telling the school what accommodation you need."***

This was false. Plaintiff's February 27, 2025 request explicitly demanded remote access and warned of catastrophic harm. Attached physician letters documented a concussion and need for modified attendance. Defendant's response was silence. The Court's response was blame.

Judge Nichols - ***"Why would a 2022 settlement apply to 2025?"***

This assumption was legally incorrect. Plaintiff had secured ADA accommodations through a federal preliminary injunction in 2022 that remained binding unless program requirements materially changed. See *United States v. Armour & Co.*, 402 U.S. 673, 681–82 (1971). The Defendant never claimed any such change. Plaintiff continued to rely on those protections throughout her enrollment. Judge Nichols's assumption that the 2022 agreement was irrelevant rewrote binding precedent and ignored the presumption of continuity in disability accommodations. Worse, it disregarded the fact that Plaintiff had already prevailed in securing emergency relief for the same kind of denial. The recurrence of that denial in 2025 was not only unlawful, it was retaliatory . Worse still, Defendant mocked Plaintiff's disability. Keller falsely accused Plaintiff of asking for 'special treatment' because she could not complete ARC paperwork without help. Judge Nichols echoed this framing, through his tone and subsequent

remarks, he appeared to agree.Interpreting cognitive disability as rudeness is the very bias the ADA and the DD Act are designed to prevent. The Court's refusal to acknowledge this, or provide support, directly violated **28 C.F.R. § 35.160(b)(2)** and **42 U.S.C. § 15001(c)(3)**. This mocked Plaintiff's known developmental and neurological disabilities and violated 28 C.F.R. § 35.130(b)(7), § 35.160(b)(2), and the DD Act's mandate to provide assistance to cognitively impaired individuals.

When Plaintiff, while visibly impaired, stated she could no longer complete forms, navigate bureaucracy, or advocate effectively due to her condition, the Court responded by implying that she was demanding inappropriate accommodations. This was not legal analysis. It was open hostility toward a known developmental and neurological disability. This Court not only refused to assist, it treated Plaintiff's impairments as evidence of failure. That conduct alone is disqualifying under **28 U.S.C. § 455(a)**. Judge Nichols's behavior at the March 28 hearing was not neutral adjudication. It was judicial misconduct. By inventing legal barriers, disregarding uncontested medical records, mocking cognitive disability, and echoing defense falsehoods, the Court denied a disabled litigant meaningful access to justice. These actions, individually and in totality, destroy the appearance of impartiality and mandate recusal under **28 U.S.C. § 455(a)**.

## IV. JUDICIAL ENDORSEMENT OF FALSEHOODS AND DISREGARD OF EVIDENCE

**A. Endorsement of Repeated False Narrative** The Defendant's misconduct in this case, led by Dean Yannick Brookes, Attorney Anessa Abrams, and LMSW Demetrius Keller, was not accidental; it was strategic, calculated, and repeated. These falsehoods were presented to the Court over a dozen times, each time contradicting verified medical records, sworn filings, and

federal disability law. And each time, this Court said nothing. The Defendant would never have dared present these outright lies, and willful mistakes of law to deceive the court, let alone repeat them, before judges like Honorable David S. Tatel or Honorable Beryl A. Howell, jurists known for their fidelity to the rule of law and rigorous enforcement of the Constitution and civil rights law. But here, Defendants acted with open defiance, as if confident that this Court would turn a blind eye. And they were right. Over and over again, this Court allowed the defense to erase Plaintiff's verified disability, elevate unsworn and vague allegations above ER records, and ignore basic legal duties under federal disability law. This permissiveness emboldened Defendants to lie, conceal, and retaliate, without consequence. The following details the knowingly false claims this Court allowed to stand, despite overwhelming email evidence, and despite the life-altering harm those lies caused.

Dean Brookes made a provably false statement in his declaration at Dkt. 27-1 ¶ 18, claiming: "I have no reason to believe that the ARC recertification process was confusing or burdensome for students." Yet in a recorded classroom speech, Brookes admitted: "Students have told me the recertification process is confusing and overly burdensome, and I agree it needs to be improved." The Court had both versions in the record but failed to address the contradiction. That alone destroys the appearance of impartiality under 28 U.S.C. § 455(a).

**B. Illegal Disregard of Medical Evidence**

Judge Nichols allowed Defendants, through Dean Yannick Brookes, Attorney Anessa Abrams, and Social Worker Demetrius Keller, to falsely claim more than a dozen times that Plaintiff was not injured, despite verified medical records proving traumatic brain injury. Their argument relied solely on a vague, alleged comment that a professor "*did not notice*" signs of distress in a

large classroom. That professor never submitted a declaration, was not medically trained, and made no individualized assessment. Meanwhile, Plaintiff submitted even more documents ER records, doctor letters, and sworn filings confirming collapse, neurological symptoms, and imminent medical risk. Even if the professor's alleged observation were true, it cannot override licensed medical judgment by law. Under *Bragdon*, 524 U.S. at 641, courts must defer to treating physicians, not unsworn anecdote. Yet this Court rejected formal medical evidence and adopted a knowingly false narrative, helping Defendants paint a disabled Plaintiff as dishonest, despite clear violations of the ADA, Section 504, and DCHRA. Worse, the Court allowed Keller, who is not a physician, to **secretly deem a doctor's letter "insufficient" without notifying Plaintiff.** The letter detailed concussion risks and requested remote access. This specific letter, dated September 21, 2024, requested reduced clinic hours due to disability and was ignored, leading to medical deterioration; Plaintiff also warned ARC in writing: ***"If I may hurt myself, it will be because of your willful refusal to follow the law."***. Plaintiff only discovered the rejection on March 23, buried in a court pleading, despite her written request having said: **"*Please don't ignore this again"*. Keller ignored it anyway, and the Court still blamed her.** This was not judicial error; it was unlawful conduct that contributes to the appearance of partiality. Under 28 C.F.R. §§ 35.130(b)(7) and 35.160(b)(2), both the Defendants and the Court had a legal duty to engage in the interactive process. not conceal, distort, or punish. Yet the Court allowed this false narrative, repeated over 12 times, to stand unchallenged, silencing Plaintiff's medical truth and reinforcing discrimination. That is judicial bias, apparent to any reasonable observer. Recusal under 28 U.S.C. § 455(a) is not optional; it is required.

**V. JUDICIAL ENDORSEMENT OF FALSEHOODS AND PERJURY**

Rather than protecting Plaintiff's disability rights, Judge Nichols amplified the violations already committed by Defendant. After Plaintiff came to this Court seeking protection of her federally protected rights, the Court itself became a new source of discrimination. Rather than correcting the unlawful denials of accommodation, Judge Nichols deepened the violations, compounding Plaintiff's injuries, obstructing her access to justice, and exposing her to catastrophic, life-altering harm. Defendant repeatedly submitted false and misleading declarations to the Court, including altered email chains and sworn statements falsely claiming that Plaintiff had not properly requested accommodations or engaged in the interactive process. For example, despite Plaintiff's February 27, 2025 email stating: "I am once again demanding access to the online class already provided to other students," and her repeated warnings of imminent medical danger, Defendant falsely declared that Plaintiff had not specified her requested modifications. At the March 28, 2025 hearing,

**Judge Nichols openly endorsed these false narratives, stating:** *"You have not done a very good job of telling the school what accommodation you need".*

This statement ignored Plaintiff's formal accommodation letters, doctors' notes, and repeated emails demanding temporary remote access, all filed into the record well before the hearing. By endorsing defense falsehoods while rejecting verified documentary evidence submitted by Plaintiff, Judge Nichols abandoned neutrality, actively obstructed Plaintiff's access to justice, and violated the fundamental duty of courts to ensure fair and honest proceedings, destroying the appearance of impartiality which requires recusal (*United States v. Microsoft Corp.*, 253 F.3d 34, 114 (D.C. Cir. 2001); *Liljeberg*, 486 U.S. at 865). The Court's refusal to intervene despite verifiable lies by Defendant officials, such as Dean Brookes's contradictory statements (see

Exhibit E), and its dismissal of Plaintiff's documented emergency request on February 27, reinforces the appearance of bias under § 455(a). His actions also violated Canon 1 and Canon 2 of the Code of Conduct for United States Judges, requiring impartiality and integrity.

**VI. FAILURE TO APPLY BINDING DOJ REGULATIONS (42 U.S.C. § 12134(a)) CAUSED LIFE-THREATENING HARM**

On April 8, 2025, this Court issued an order demanding that Plaintiff file a new motion explaining why her physician had not used the "magic words" necessary to justify accommodations. The order gave Plaintiff less than 24 hours to comply, despite the Court already

> Docket Text:
> MINUTE ORDER. Upon consideration of the [53] Joint Status Report, it is hereby ORDERED that, no later than April 9, 2025 at 5:00 PM, Plaintiff shall file on the docket a detailed explanation of why she has thus far been unable to provide Defendant with medical documentation specifically stating that she requires remote access to her two 3-hour classes to accommodate her recent injuries. It is further ORDERED that the Parties shall appear for a hearing on Plaintiff's [23] Motion for Preliminary Injunction on April 11, 2025 at 11:00 AM in Courtroom 17. So ORDERED by Judge Carl J. Nichols on 4/8/25. (lccjn1)

being on notice that Plaintiff had a documented neurological disability and was in active medical crisis. That order, issued without regard for Plaintiff's condition or prior warnings, directly triggered the collapse and emergency room admission that occurred on April 9. Plaintiff suffered a traumatic brain injury and may now live with permanent neurological damage. Earlier that same day, **April 8 at 11:45 a.m.,** Plaintiff emailed ARC, warning of worsening neurological symptoms. She wrote: *"I'm speaking from a place of constant pain… My head feels like it's being crushed… I can barely think straight… Will the school send someone to walk me?…* Because if not, then what are they really saying? That I don't matter?"

This was a clear and emotional plea for help—**sent before the Court issued its order**. Plaintiff

> **Sent:** Tuesday, April 8, 2025 11:45 AM
> **To:** Butler, Pamela <pamela.butler1@udc.edu>
> **Subject:** Re: 2nd follow up email after denial - attach 4th Dr note - 5th doctors note coming
>
> Thank you, truly for your help! Thank you for finally engaging in the interactive process I have been *begging* for, something I've pleaded for over and over, while suffering in silence, dismissed, ignored, and left to deteriorate. I'm speaking from a place of *constant pain*. My head feels like it's being crushed from the inside out, like a pressure cooker that never lets up. Every step I take feels like it rattles my skull. Every heartbeat echoes like a drum inside my brain. I can barely think straight, let alone sit through a class and pretend I'm okay.
>
> This isn't just discomfort. It's not just a bad day. It's *daily agony*. And I went through this last fall too, when I pleaded with ARC for support and they ignored me. I told you then, and I told my doctors, that I was **close to suicidal** because I was being forced to push through nearly 300 clinic hours and 15 credits while in a medical crisis. The clinic had to intervene just so I could survive.
>
> And now, here we are again. I'm back in that dark place, because my school would rather see me sit in class *in visible pain*, unable to learn, disrupting my peers with gasps and cries, than simply accommodate me with remote access or recordings. Accommodations others receive without question, for far less.
>
> I feel invisible. Disposable. Like my pain doesn't count because it's not convenient for the school to care.
>
> Even my disability aide, the one helping me walk to class so I don't fall, can't take off any more time. Will the school send someone to walk me? To make sure I don't collapse?
>
> Because if not, then what are they really saying? That I don't matter? Nobody cares about me? That it's okay if I fall? That I should suffer quietly?
>
> I spoke to my mental health doctor about this *today*. I called it what it is: abuse. Because that's what it feels like when you cry out for help and get silence in return.
>
> I'm tired. I'm hurting. And I need someone to care *before it's too late*.

explicitly stated that she was cognitively impaired, in constant pain, and **could not function independently**. She warned that she was at risk of collapse. The Court ignored the warning. Instead, it imposed a 24-hour deadline requiring legal argument about a doctor's word choice—an unreasonable demand for any litigant, let alone one recovering from a medically documented concussion. On **April 9**, just after **2:40 p.m.**, Plaintiff collapsed in the hallway of UDC Law. She had attended class in person, still waiting for accommodations to be implemented. **911 was called**. Medical records confirm that she was transported to the emergency room with signs of neurological distress. The court and the defendant had refused to act for weeks. Now, at the last possible moment, it shifted the burden back to Plaintiff to coordinate her own solution, **despite knowing she was impaired** and had previously collapsed from overexertion on **March 28**. The **timing is not coincidental**. The **April 8 Court order**, the **April 9 collapse**, and the **911 response** are directly connected. Plaintiff had already informed the Court on **March 31** that she could not advocate for herself, could not write filings, and could not function without medical

accommodation. The Court issued the order anyway. The Defendant and ARC ignored the warning signs. The result was catastrophic.

**A. Court-Scheduled In-Person Hearings After Medical Collapse Were Retaliatory and Abusive**

After Plaintiff collapsed at UDC Law on March 28, 2025—hitting her head and suffering a documented traumatic brain injury—she informed the Court of worsening symptoms including memory lapses, vision loss, and cognitive confusion. Emergency medical records confirmed a concussion diagnosis. Yet instead of accommodating this medical crisis, the Court scheduled two additional in-person hearings: one on April 3 and another on April 11. These were not urgent or necessary. They were discretionary settings scheduled despite Plaintiff's documented inability to safely travel, speak, or process information under pressure. The March 28 hearing had already shown that Plaintiff was slurring her words and unable to remember how to mute her phone—yet the Court's response was to intensify the burden, not relieve it. This conduct violated the ADA, Section 504, and the Developmental Disabilities Act, all of which require affirmative accommodations, not punishment, for cognitive and neurological disability. Forcing a brain-injured litigant to attend in-person hearings after collapse is not legal process—it is abuse. It reflects deliberate indifference to medical danger, and it placed Plaintiff's life and access to justice at continued risk. These hearings were scheduled not despite the injury, but because of it—further evidence of judicial hostility and retaliatory conduct that mandates recusal under 28 U.S.C. § 455(a).

This is not just a procedural failure. It is a violation of federal disability law and an act of judicial misconduct. The ADA, Section 504, and the DD Act each recognize the rights of disabled

individuals not to be forced to navigate legal and educational systems alone while impaired. See: **29 C.F.R. § 1630.9** (ADA interactive process requirement) **34 C.F.R. § 104.44(d)** (Section 504 higher education standard) **42 U.S.C. § 15001(a)(5), (c)(3)** (DD Act: obligation to provide advocacy and prevent harm).

Plaintiff's April 9 collapse was foreseeable. It was preventable. And it was triggered by a Court that had full knowledge of the risks and chose to act anyway. **This conduct alone justifies disqualification under 28 U.S.C. § 455(a),** not merely for bias, but for the Court's **indifference to human safety** and its **role in inflicting medical harm**.

She now lives with:

- Cognitive dysfunction;
- Impaired ability to walk and think;
- Loss of academic standing and graduation access.

All of it was foreseeable. All of it was preventable. All of it was caused by the Court's failure to follow controlling disability law.

**VII. VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT AND SEC 504**

Judge Nichols's actions systematically violated the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act. These violations were not isolated or procedural—they formed a repeated pattern of unlawful conduct that caused irreversible harm.

Here, Judge Nichols engaged in a pattern of conduct violating these laws:

- **Failed to timely adjudicate Plaintiff's Emergency Injunction**, despite documented collapse and medical warnings;
- **Advanced defense arguments Defendant themselves had not raised**, blocking Plaintiff's access to reasonable accommodations, contrary to the Court's neutral role;

4/10/2025

To whom it may concern,

is a patient at Mary's Center. She is currently suffering from post-concussion syndrome following a motor vehicle accident with symptoms worsening in the last month. She has had two ER visits in this time (3/28/2025 and 4/9/2025) and was seen by me on April 4. Post-concussion syndrome (F07.81) is characterized by headache, dizziness, difficulty concentrating and problems with short-term memory. She has been referred to Neurology for further evaluation given her symptoms are worsening and not improving with time.

Ms. , would benefit from being able attend classes remotely due to her concussion, as she is currently not able to safely walk unassisted/unattended and her symptoms may be disruptive to the learning of others. Additionally, she would benefit from being permitted to utilize pre-recorded lectures when her symptoms prevent her from attending class as it is occuring.

While I was only made aware of Ms. 's symptoms on April 4, she reports that they made it difficult to participate starting March 19, 2025. Please consider excusing these absences.

If you are unable to provide these exact accommodations, please work with Ms. to find alternative accomodations that allow her to participate in scheduled classes and activities as graduation approaches. If she is unable to catch up on the material in time, please mark her courses Incomplete ("I") so that she may work with faculty to complete them on an adjusted schedule.

Thank you,
Dana Mueller, MD
Internal Medicine

## Referrals to be Scheduled

**Referrals to be Scheduled with:**
**MedStar Physical Therapy:** with MedStar Health Physical Therapy Access Center (844-914-3878)
· *·**Additional Information:** Referral to physical therapy for evaluation and treatment of cervical and vestibular symptoms associated with a concussion. Please treat for 2 visits per week for 6 weeks. Modalities and exercies as indicated.
**MedStar Speech Language Pathology:** with MedStar Health Physical Therapy Access Center (844-914-3878)
· *·**Additional Information:** Please evaluate and treat for cognitive and speech deficits associated with concussion. 1-2 visits per week for 6 weeks.

- **Ignored Plaintiff's Emergency Room records, doctors' letters, and emergency filings warning of catastrophic risk**;

- **Refused to pause proceedings** even after Plaintiff disclosed fainting minutes earlier and exhibited slurred, confused speech, denying effective participation.

These actions denied Plaintiff the reasonable modifications and effective communication required under federal disability law, foreseeably causing catastrophic physical and educational harm.

Such accommodations are mandatory. As the Supreme Court has held, public entities must provide reasonable accommodations to prevent disability-based exclusion. See *Barnett v. U.S. Air, Inc.*, 535 U.S. 391, 397 (2002) ("An employer must make a reasonable accommodation… unless doing so would create an undue hardship."). Accommodations must also prevent unjustified isolation. See *Olmstead v. L.C.*, 527 U.S. 581, 597–600 (1999). Judge Nichols's refusal to uphold these principles, even after being warned repeatedly of the medical danger, resulted in the precise harm these laws were designed to prevent. Plaintiff, who should have been preparing for graduation ceremonies, is instead undergoing **speech therapy, vision therapy, and physical therapy** because of the traumatic brain injury she sustained during these proceedings, harm caused directly by the Court's refusal to act.

### A. The Court Also Allowed Defendants to Deny Plaintiff's Injury Without Any Evidentiary Basis

In addition to tolerating sworn contradictions, this Court allowed the Defendants to repeatedly claim that Plaintiff was not injured, even after Plaintiff submitted doctor's letters, ER records, and testified under oath that she had hit her head and could not remember how to mute her phone. These statements were made *without any evidentiary basis*, in violation of Rule 11(b)(3)

and fundamental disability rights law. Despite real-time medical disclosures and multiple urgent warnings, Defendants falsely stated that Plaintiff "had not submitted documentation," "was not clearly injured," or "did not go through the process." These statements contradicted: A formal ADA request and doctor's letter on February 27, 2025; Medical records following two separate collapses and concussions; Plaintiff's live statements during the March 28, 2025 hearing describing disorientation, slurred speech, and cognitive impairment. Rather than reject those unsupported claims, the Court adopted them, accepting, repeating, and building its ruling on them.

## VIII. VIOLATIONS OF THE D.C. HUMAN RIGHTS ACT AND THE DD ACT

Judge Nichols's conduct also violated the District of Columbia Human Rights Act (DCHRA) and the Developmental Disabilities Assistance and Bill of Rights Act (DD Act). These laws, like the ADA and Section 504, prohibit discrimination based on disability and require affirmative steps to ensure equal access.

### A. Violation of the DCHRA

The DCHRA, D.C. Code § 2-1402.21, prohibits discrimination based on disability in public accommodations, including the court system. A court's refusal to provide reasonable accommodations, effective communication, or equal access constitutes a violation of this statute. Here, Plaintiff repeatedly requested reasonable accommodations in good faith, based on verified disability and documented medical need. Yet the Court refused to act, and its silence gave the Defendant license to discriminate with impunity. The outcome: Plaintiff was denied Incompletes, exam deferrals, and even the right to participate in graduation, all while the Court remained

aware of her diagnosis and medical impairments. These failures were not passive, they were active denials of rights guaranteed under the DCHRA.

**B. Violation of the DD Act**

The Developmental Disabilities Assistance and Bill of Rights Act (DD Act), 42 U.S.C. §§ 15001–15115, mandates that individuals with developmental disabilities must be protected from discriminatory treatment and must be granted meaningful access to services and programs affecting their lives. Courts, as public entities, are bound by these requirements. Plaintiff qualifies as a protected individual under both the DCHRA and the DD Act. She disclosed her disability status early in the proceedings, submitted updated medical documentation confirming her traumatic brain injury and related impairments, and pleaded for help navigating basic academic and court procedures. Her requests included:

- Guidance on how to request Incompletes;
- Emergency relief for final exams;
- Participation in graduation ceremonies;
- An advocate, next friend, or appointed counsel to help her respond.

These were not optional accommodations. They were essential protections required by federal and local law.

**C. Judicial Abdication and Facilitation of Discrimination**

Judge Nichols abdicated his legal responsibility. Rather than intervene or enforce anti-discrimination protections, he became a silent accomplice to the Defendant’s calculated campaign of obstruction and retaliation. For example, the Defendant twisted a vague classroom observation, allegedly from a professor who was not medically trained, into a false claim that Plaintiff was not injured. The professor did not submit any declaration, did not make any

individualized assessment, and did not contradict the ER records submitted by Plaintiff. Despite this, Judge Nichols permitted the false narrative to stand. He allowed an illegal assessment, lacking any medical basis, to be used against Plaintiff, a blatant violation of the ADA, Section 504, DCHRA, and DD Act. He took no action to correct it. In doing so, the Court became an enabler of discrimination, not a check against it. These failures undermine not just Plaintiff's rights, but the integrity of the judicial system. When a court sides with discrimination by silence, especially after being repeatedly informed of risk, harm, and injury, it violates the very laws it is sworn to uphold.

**IX. VIOLATIONS OF DUE PROCESS AND EQUAL PROTECTION** The Due Process Clause of the Fifth Amendment guarantees litigants a meaningful opportunity to be heard and to participate in proceedings affecting their rights. The Equal Protection Clause of the Fourteenth Amendment prohibits governmental actors from treating similarly situated individuals differently without adequate justification. Discrimination based on disability is subject to heightened scrutiny (*City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 448 (1985)). Judge Nichols violated both clauses through a pattern of actions: Refusing to timely adjudicate Plaintiff's Emergency Injunctions after collapses, despite promptly granting relief in cases involving non-disabled litigants; Advancing and adopting Defendant's false narratives while ignoring Plaintiff's verified medical evidence and emergency filings; Treating Plaintiff's disability rights as discretionary rather than mandatory under federal law; Continuing litigation proceedings despite Plaintiff's medical incapacity, and inability to advocate for herself safely. These actions deprived Plaintiff of meaningful access to the courts and treated her less favorably based solely on her disability, in violation of constitutional guarantees. The resulting catastrophic harm, including

life-altering brain injury and educational derailment, was foreseeable and preventable had the Court honored its constitutional obligations.

**X. VIOLATIONS OF THE CIVIL RIGHTS ACT (42 U.S.C. §§ 1983, 1985)**

Judge Nichols violated the Civil Rights Act by using the power of the bench to strip Plaintiff of federally protected rights. Under 42 U.S.C. § 1983, a judge acting under color of law is liable when they deprive someone of rights guaranteed by the Constitution or federal statutes (*Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978). Here, Judge Nichols refused to adjudicate Plaintiff's emergency accommodation requests, knowingly accepted false declarations, inserted arguments not raised by Defendants, and dismissed binding DOJ regulations as non-law—all while Plaintiff's documented medical crises were unfolding in real time. These are textbook violations of the ADA, Section 504, the DD Act, and the 5th and 14th Amendments. Under 42 U.S.C. § 1985(3), liability also arises from conspiratorial or coordinated actions that deny a person equal protection. While no explicit conspiracy need be alleged, the Court's repeated alignment with false narratives, refusal to acknowledge Plaintiff's verified medical evidence, and continued disregard for statutory obligations created a de facto scheme of discriminatory treatment, demonstrating a pattern inconsistent with impartiality. The result was not just bias—it was civil rights abuse from the bench.

**XI. Grounds for Recusal Under 28 U.S.C. § 455(a): Judicial Bias, Suppression of Evidence, and Weaponization of Disability**

Plaintiff respectfully moves for recusal on five independent legal grounds: (1) breach of the Judicial Code of Conduct under Canons 2 and 3A(1); (2) violation of the Supremacy Clause and the judicial oath of office; (3) controlling precedent requiring recusal in civil rights and disability

rights cases; (4) actual judicial advocacy for the Defendant; and (5) systemic due process violations. Each ground is detailed below, supported by factual findings, legal citations, and documentary evidence showing this Court's pattern of misconduct, delay, and complicity in the denial of Plaintiff's rights and access to justice.

**A. Breach of the Judicial Code of Conduct**

Under Canon 2 of the Code of Conduct for United States Judges, "a judge should avoid impropriety and the appearance of impropriety in all activities." Canon 3A(1) further commands that a judge "should perform the duties of the office impartially and diligently." Judge Nichols has not merely failed to remain neutral—he has actively endorsed Defense counsel's fabricated "magic words" requirement as if it were legally mandated. By parroting counsel's invented standard, the Court stepped into the role of advocate. This destroyed neutrality and independently requires disqualification.

**B. Violation of the Oath of Office and Supremacy Clause**

Article VI of the Constitution and the judicial oath require judges to enforce federal law equally. Here, Judge Nichols refused to enforce clear mandates of the ADA and Section 504, even after receiving unrefuted medical documentation. This conduct subordinated Plaintiff's rights to personal disbelief, violating both the Supremacy Clause and the judicial oath.

**C. Controlling Civil-Rights Recusal Precedent**

The Supreme Court has held that personal disbelief in federal rights creates an appearance of bias. See *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988); *In re Murchison*, 349 U.S. 133 (1955). Where, as here, a judge repeatedly disregards ADA obligations and the record, recusal is required to preserve integrity.

**D. Actual Advocacy on Behalf of a Party**

A judge who adopts one side's theory as his own destroys neutrality. See *Liteky v. United States*, 510 U.S. 540, 555 (1994). Judge Nichols repeatedly invoked the Defense's fabricated "magic words" standard to deny Plaintiff relief. He ruled on arguments not raised by the Defendant and used silence caused by disability against her. That is advocacy, not adjudication.

**E. Fundamental Due-Process Violation**

Due process requires more than neutrality. It requires a fair opportunity to be heard. Here, the Court forced a disabled Plaintiff to litigate through a brain injury, ignored every medical warning, and ruled as if she had full capacity. That is structural bias under *Caperton v. A.T. Massey*, 556 U.S. 868 (2009), and warrants recusal.

This Court had the power—and the duty—to protect a disabled litigant from irreparable harm. Instead, it enabled that harm, knowing the consequences. By May 2, 2025, the Court had been informed that Plaintiff was experiencing permanent neurological symptoms following two documented collapses at the law school. She had submitted four separate accommodation emails (April 18, 19, 22, and 23), a doctor's letter on April 10 formally diagnosing post-concussion syndrome and requesting Incompletes, remote access, and deferrals for final exams. Her filings explicitly stated that she was under active medical supervision, undergoing **speech therapy, vision therapy, physical therapy**, and experiencing **depressive and cognitive symptoms** that made it impossible to keep advocating for herself. She warned that writing motions was causing physical harm. She told this Court she could not keep up with the docket and had missed doctors appointments as a result. She also explicitly stated that, beginning March 29, she was no longer able to read or comprehend the Defendant's filings due to cognitive impairment caused by her

brain injury. Most of Defendant's filings from that point forward were never read at all. Both the Court and the Defendant knew this, and yet continued to treat her silence as if she had consented or waived her rights, further weaponizing her disability against her. Instead of offering relief or modifying procedures under the ADA, the Court and Defendant exploited this incapacitation—filing motions they knew she could not answer, treating silence as waiver, and using procedural rules to block her access to graduation and exams. The May 12 and May 13 orders are not just failures of diligence—they are direct examples of how the Court and Defendant coordinated to weaponize Plaintiff's disability against her.

The Court ignored all of it. On **May 5**, it granted Defendant's motion for an extension, pushing the parties' response deadline to **May 8**—just **one day before** Plaintiff's scheduled law school graduation. On **May 12**, the Court issued a formal **Order denying Plaintiff's motion to appoint counsel** (ECF No. 65), again failing to mention Plaintiff's April 9 collapse, her TBI diagnosis, or her written warnings that she could no longer safely represent herself. On **May 13**, the Court granted the **Defendant's motion for extension** as "unopposed," despite knowing from Plaintiff's prior filings that she was medically incapacitated and unable to respond to deadlines. The Court treated that silence as consent.

These rulings show not neutrality—but complicity. The Court had direct evidence that Plaintiff was under neurological care, warned that advocacy was physically dangerous, and that she needed immediate relief to avoid being excluded from her May 8 and May 9 ceremonies. It did nothing. The result was not procedural error. It was the predictable denial of access and permanent medical harm.

**A. The May 2 Motion Was Never Ruled On, Enabling Exclusion From Graduation**

The emergency motion filed on **May 2, 2025**, titled *"Ongoing Abuse, Medical Harm, and Judicial Complicity,"* was not just a graduation request—it was a formal notice that Plaintiff had already submitted four accommodation emails, had not received a response, and was in medical crisis. The Court had all relevant documentation: her April 10 doctor's letter, the April 9 collapse, and multiple filings documenting speech, vision, and physical therapy. Yet the Court never ruled on the motion. Instead, it extended deadlines for the Defendant and issued a May 12 denial of counsel that made no mention of Plaintiff's medical condition.

Under 28 C.F.R. § 35.130(b)(7), public institutions and courts must modify procedures to avoid disability-based exclusion. The Court's refusal to act made Plaintiff's exclusion from both ceremonies inevitable. This was not merely delay. It was the constructive denial of federally protected rights.

**B. The May 12 and May 13 Orders Ignored Medical Incapacity and Enabled Falsehoods**

In its **May 12, 2025 Order**, the Court denied appointment of counsel without a single reference to Plaintiff's traumatic brain injury, medical records, or her statements that she could no longer advocate for herself. This omission is indefensible. The record was saturated with documentation —ER visits, therapy updates, doctor's letters, and filings that warned of Plaintiff's inability to engage.

Worse still, on **May 13**, the Court granted the Defendant's motion as "unopposed," despite knowing Plaintiff had informed the Court that she was incapacitated and not consenting. The

Court accepted this "non-opposition" as legally valid, furthering the Defendant's false narrative that Plaintiff was simply noncompliant, rather than medically unable.

A judge may not ignore a litigant's disability and pretend silence is procedural agreement. That is not impartiality—it is systemic bias. As the Supreme Court held in *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), due process demands recusal when the risk of actual bias becomes intolerable. This Court's rulings show deliberate indifference to Plaintiff's rights and an active preference for Defendant's false narrative.

**C. Judicial Inaction Caused Permanent Harm and Violated Federal Law**

Plaintiff missed her graduation. Her family canceled travel plans. She was excluded from the May 8 and 9 ceremonies she had earned—**not because she failed to meet requirements, but because this Court refused to enforce the law**. The ADA guarantees equal access to education and public services. *Winter v. NRDC*, 555 U.S. 7, 24 (2008), requires emergency relief when irreparable harm is likely. The Court was fully aware of that harm and chose silence. That silence was not neutral. It was discriminatory.

**D. New Violations Reflected in the May 12 and May 13 Orders**

The May 12 and 13 orders introduce new, discrete violations of Plaintiff's federal rights and procedural protections:

1. **The May 12 Order Denied Appointment of Counsel Without Citing a Single Fact.**

   The Court made no factual findings and failed to acknowledge Plaintiff's well-

documented disability. This is a due process violation, as it denied Plaintiff's request without considering her actual cognitive and physical condition.

2. **The May 13 Order Treated Silence as Waiver Despite Documented Incapacitation.** Plaintiff had already informed the Court she could not respond to deadlines due to her TBI. By treating her silence as opposition waived, the Court applied a standard that penalizes disability in direct violation of 28 C.F.R. § 35.130(b)(1)(vii).

3. **Both Orders Demonstrate Intentional Omission of Disability Evidence.** Neither ruling references any medical facts in the record. This creates a pattern of intentional exclusion of disability-related evidence from formal judicial orders, reinforcing that this Court is not neutral, but is actively suppressing the disability context to justify denial.

These violations, reflected directly in the Court's own rulings, reinforce that recusal is not only appropriate—it is legally and ethically required under 28 U.S.C. § 455(a).

**XII. Judicial Endorsement of False Legal Standards: Title I Employment Rules Applied to a Title II Disability Case**

See U.S. Dep't of Justice, Title II Technical Assistance Manual § II-3.6000, § II-3.6100 (explaining that public entities must provide reasonable modifications without requiring individuals to use specific language or submit repeat certifications once a disability is documented); see also 28 C.F.R. §§ 35.130(b)(1)(vii), 35.130(b)(7), and 35.106 (prohibiting public entities from using eligibility standards or documentation burdens that screen out individuals with disabilities).

This case arises under Title II of the Americans with Disabilities Act (ADA), which governs access to public services, not employment. Title II imposes an affirmative duty on covered

entities to make reasonable modifications, avoid unnecessary burdens, and engage in an interactive process in good faith. Yet the Defendant repeatedly relied on legal standards derived from Title I—the ADA's employment provisions—by claiming that Plaintiff had failed to "recertify" her disability, provide "updated" paperwork, or use "magic words" to trigger protection. These arguments are both legally incorrect and explicitly rejected by Department of Justice and Office for Civil Rights guidance.

Judge Nichols not only accepted these misstatements—he relied on them in rulings. In multiple orders and hearing statements, the Court echoed the defense's assertion that Plaintiff had failed to follow "proper procedures," despite the record showing that she had submitted emergency documentation, updated medical evidence, and made repeated good-faith requests for help. The Court treated the Defendant's fabricated Title I compliance theory as dispositive while ignoring binding Title II obligations.

The Court never cited any DOJ or OCR Title II guidance. It never addressed Plaintiff's argument that the "recertification" and "magic words" requirements were unlawful. It never acknowledged that under Title II and Section 504, a disabled student is not required to re-prove her disability multiple times in a semester to maintain access to accommodations. Instead, the Court treated those fabricated burdens as controlling.

This judicial endorsement of false legal standards is not a good-faith legal disagreement—it is a structural failure. It reflects a refusal to apply governing federal law and a preference for arguments that have no basis in ADA Title II jurisprudence. It shows judicial advocacy, disregard for the Supremacy Clause, and systemic bias that independently require recusal under 28 U.S.C. § 455(a)

**XIII. Judicial Fact-Finding Without Record or Discovery Based on Provably False Statements**

On May 15, 2025, Judge Nichols stated in open court: "If Doe did everything right…"—a statement that reveals prejudgment of disputed facts without the benefit of discovery, cross-examination, or evidentiary hearings. This statement, offered as a justification for denying relief, reflects deep bias. It was not grounded in any admissible evidence, sworn testimony, or factual findings. Rather, it was based entirely on the Defendant's filings—filings that contain provable falsehoods, material omissions, altered timelines, and knowingly misleading representations.

The record already included evidence contradicting Defendant's claims: emails to and from Dean Brookes; classroom recordings; emergency room documentation; and Plaintiff's undisputed remote access to two other classes during the same semester. These materials directly rebutted the assertion that "remote access was not feasible." Yet the Court ignored that evidence and instead adopted the narrative of individuals—Dean Brookes, ARC Director Butler, and Defense Counsel—who had already violated federal disability law and who stood to benefit from misrepresenting the record.

Judge Nichols had no legal authority to make credibility determinations at this stage, particularly without affording Plaintiff discovery or a jury trial. His statements reflect not only improper fact-finding but a collapse of judicial neutrality. By acting on incomplete and falsified filings—and by failing to question their origin, accuracy, or compliance with the rules of evidence—the Court ceased to be a neutral arbiter and instead functioned as an advocate for the Defendant.

This conduct compounds the already established grounds for recusal. It constitutes a violation of Plaintiff's due process rights and confirms that the Court's rulings are structurally biased. No

litigant can receive a fair adjudication when the presiding judge embraces falsehoods, ignores exculpatory evidence, and denies relief based on fabricated timelines and legal fictions submitted by parties under sanction threat. The May 15 remarks alone would warrant disqualification under 28 U.S.C. § 455(a).

**XIV. COURT-ENABLED OBSTRUCTION AND DELIBERATE SILENCE: THE DENIAL OF INCOMPLETES AND DESTRUCTION OF GRADUATION**

Since March 28, 2025, Plaintiff has been forced to navigate the aftermath of a traumatic brain injury without any meaningful support—not from UDC's disability office, not from the law school, and not from this Court. The result has been catastrophic. Despite verified medical documentation, repeated ER interventions, and multiple written pleas between April 18 and April 22, Plaintiff sent three urgent emails to ARC Director Pamela Butler and Dean Yannick Brookes requesting guidance on how to request Incompletes and navigate final exams. She warned that her symptoms including seizures, cognitive fog, and memory lapses, made it impossible to complete tasks or advocate for herself. She explicitly asked for help as a reasonable accommodation under the ADA and Section 504. No one responded. This silence is not administrative error; it is retaliation by omission—made possible by the Court's refusal to enforce federal law. For over a month, Judge Nichols remained silent in the face of: Verified ER visits and neurological impairment; Repeated emergency filings; Irrefutable proof of obstruction and perjury by Defendants. That silence gave UDC a license to retaliate. Plaintiff is now being denied graduation and assigned failing grades, not because she failed to complete her work, but because she was denied access to the very process meant to protect her. This is judicial bias with

life-altering consequences. It is the Court's inaction that legitimized the Defendants' misconduct and enabled them to destroy Plaintiff's academic future in plain view of federal law.

**XV. DENIAL OF ACCOMMODATION AND RESULTING HARM DESPITE COMPLIANCE WITH COURT ORDER**

The Court's insistence on specific " magic words,: culminating in the medically reckless April 8 Order, created an impossible situation that even Plaintiff's treating physician initially struggled to comprehend, apparently assuming Defendants would adhere to standard ADA procedures rather than demanding specific phrasing explicitly contrary to law and guidance. It was only after the catastrophic events following the March 28 hearing, and on April 9, that the physician seemingly understood the extent to which Defendant and this Court were willfully violating basic disability rights law designed to prevent precisely the danger Plaintiff faced. Consequently, despite clinic policy constraints regarding dictating specific legal accommodations, the physician issued a highly detailed letter on April 10, 2025. This letter confirmed the post-concussion syndrome diagnosis, detailed the resulting inability to safely walk unassisted, recommended remote class attendance and use of recorded lectures, urged Defendant to engage in the interactive process for alternatives if necessary, and explicitly requested course Incompletes ("I") to allow Plaintiff recovery time. Even after Plaintiff endured the Court-ordered ordeal to procure this specific documentation, effectively satisfying the Court's demand for "magic words" and overcoming the false recertification narrative, Defendants have *still* ignored the accommodation request for over three weeks. The result is devastating: Plaintiff now cannot walk, is left without guidance on navigating this process, and sees her hard-earned dream of graduating law school destroyed by the combined actions of the Defendant and this Court. What new falsehoods will Defendant and

the Court now invent to deny accommodations following the April 9 collapse? The Court's direct role in creating this harmful, unlawful predicament, forcing Plaintiff into a medical crisis to satisfy an improper demand, only for the resulting compliance to be ignored by Defendants with impunity, is itself further evidence of the deep-seated bias and failure of impartiality that mandates Judge Nichols's immediate recusal.

## XVI. THE COURT CONTINUES TO DEMAND LITIGATION FROM A DISABLED PLAINTIFF WHO CANNOT ADVOCATE FOR HERSELF

Even after suffering a traumatic brain injury, after collapsing in court, hitting her head, submitting ER records, and explaining on the record that she could not remember how to mute her phone, this Court has refused to appoint counsel, grant a stay, or provide any meaningful accommodation. Instead, the Court has continued to demand complex legal filings from a cognitively impaired Plaintiff who has repeatedly stated that she can no longer advocate for herself. **This is not hypothetical.** It is still happening. As of the date of this motion **May 11, 2025,** Plaintiff is being forced to draft **emergency filings under blinding pain, slurred speech, and documented neurological impairment.** Despite telling the Court, in plain language, that she could not complete filings without harm, the Court continues to demand them, and then blames Plaintiff when they are not perfect.

This has been the pattern since the beginning of the case:

- The Court refused to recognize Plaintiff's disability.
- It rejected formal doctor's letters and ER records.
- It adopted unsupported defenses.

- And now, it continues to hold a brain-injured Plaintiff to a standard that **even licensed attorneys would struggle to meet**.

This is not just a due process violation. It is inhumane.

A judge who refuses to intervene while a disabled litigant deteriorates and continues to force that litigant to fight for survival alone is no longer functioning as a neutral adjudicator. The Court's actions, and its inaction, have made it a **source of ongoing harm**.

This violates the ADA, Section 504, the Constitution, and the standards of judicial impartiality under **28 U.S.C. § 455(a)**.

**XVII. Judicial Silence Enabled Graduation Discrimination**

Since April 18, Plaintiff has made repeated written requests asking whether she will be allowed to walk at graduation or whether her documented disability will be used to bar her from the ceremony. Despite these pleas, sent in good faith while experiencing severe medical distress—Defendants refused to provide any response until May 5, just five days before graduation. On that day, for the first time, defense counsel confirmed that UDC would not allow Plaintiff to walk, explicitly punishing her for a documented disability that the school itself caused.

This is not a misunderstanding. This is not a delay. It is direct, intentional discrimination. It is also a public act of humiliation. Plaintiff's name will be omitted. Her seat will be empty. Her family—who would have to travel from Connecticut—has no clarity and no answer. The refusal to accommodate Plaintiff's neurological disability in one of the most symbolic moments of her academic career is an ongoing, irreparable ADA violation.

Judge Nichols had full knowledge of these facts. Plaintiff submitted multiple emergency motions explaining the danger of delay. The Court knew she had suffered a brain injury on campus. It knew she was being denied access to Incompletes, final exams, and academic status protection. And still the Court chose silence. This inaction gave the Defendant a green light to discriminate and they did, openly.

**XVIII. URGENT NEED FOR IMMEDIATE RECUSAL**

Immediate recusal is legally and ethically required under 28 U.S.C. §§ 455(a) and 144. Under Section 455(a), a judge must disqualify himself whenever his impartiality might reasonably be questioned. The standard is objective, focusing on the appearance of impropriety (*United States v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995) ("The appearance of impropriety alone requires recusal.")). Under Section 144, disqualification is mandatory when a party submits a timely affidavit demonstrating personal bias or prejudice. Here, Plaintiff has demonstrated, through this pleading under oath, direct quotes, documentary evidence, and judicial admissions, that Judge Nichols engaged in a pattern of conduct demonstrating bias and violating the appearance of impartiality: he refused to follow controlling federal disability law, expressly declaring that "DOJ guidelines are not law" despite 42 U.S.C. § 12134(a); Refused to adjudicate Plaintiff's Emergency Injunctions despite imminent, life-threatening medical risk; Endorsed knowingly false claims submitted by Defendant; Ignored catastrophic medical collapses, and verified Emergency Room reports; Treated Plaintiff's protected disability rights as discretionary, not mandatory. These actions, viewed individually and as a pattern, destroyed any reasonable appearance of impartiality; bias or prejudice requiring recusal can arise where impartiality is reasonably questioned. They resulted in catastrophic, life-altering harm, including permanent

neurological injury, and stripped Plaintiff of her opportunity to graduate with honors in May 2025. As the Supreme Court has recognized, a fair trial in a fair tribunal is a basic requirement of due process (*In re Murchison*, 349 U.S. 133, 136 (1955)). No disabled litigant can be expected to believe they will receive fair treatment while subject to proceedings overseen by a judge who openly disregards federal disability law, ignores life-threatening emergencies, and amplifies falsehoods offered by opposing parties. Immediate recusal is necessary to preserve the integrity of these proceedings, protect Plaintiff from further irreparable harm, and uphold the rule of law.

## XIX. THIS COURT IS CAUSING ONGOING MEDICAL HARM BY FORCING A DISABLED LITIGANT TO LITIGATE ALONE WHILE SUFFERING A TRAUMATIC BRAIN INJURY

I am currently undergoing **speech therapy twice a week, vision therapy, and physical therapy** because I suffered a traumatic brain injury during these proceedings because of the court failed to act. That injury has been severely worsened by this Court's refusal to appoint counsel, assign a friend of the court, or provide any form of meaningful accommodation. I am not choosing to litigate in this condition. I am being forced to do so under threat of forfeiting my case, while enduring neurological trauma, cognitive dysfunction, and physical exhaustion. This Court was present when I collapsed on the record. It knows I was rushed to the emergency room. It has been repeatedly informed of my diagnosis, my medical treatment, and my continued risk of further brain damage. Yet the Court has insisted that I continue drafting legal motions from a sickbed, alone. This is not simply unjust, it is cruel, medically dangerous, and unlawful.Under Title II of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act, courts are public entities with an affirmative legal duty to accommodate known disabilities. See 28 C.F.R. § 35.160. That duty includes modifying deadlines, appointing counsel or a friend of the

court, and ensuring that disabled litigants can access proceedings on an equal basis. Failure to do so, especially when the Court is fully aware of the medical danger and caused the injury, is deliberate indifference in violation of federal law. I am writing these pleadings through blurred vision, slurred speech, and extreme brain pain. Each time I write a motion or respond to an order, I experience severe neurological pain that leaves me incapacitated for the rest of the da**y.** On **May 5 and May 7**, I was **forced to miss two vital doctor appointments,** appointments intended to help me recover from the very injury this Court's actions have worsened, because I was in too much pain after struggling to meet court-imposed deadlines. This is not "meaningful access." It is constructive exclusion from the judicial process. The ADA and Section 504 were enacted to protect disabled people from exactly this kind of abuse—being told to "push through it" while the government looks away. The law does not allow courts to ignore a known brain injury and demand self-representation from a person undergoing intensive therapy. Yet that is precisely what this Court has done. The result is not justice. It is preventable medical harm. It is a loss of rights not based on the merits, but on my disability. And it is occurring because this Court has made the deliberate choice to provide no assistance, no reprieve, and no path to meaningful participation. No reasonable person reviewing these facts, watching a disabled litigant collapse, ignore medical orders, and miss treatment just to keep up with court filings, would believe this process is fair. A judge who knowingly forces that kind of burden on a brain-injured party cannot be seen as impartial.

## XX.PLAINTIFF'S MOTION TO RECUSE JUDGE CARL J. NICHOLS FOR BIAS, DISCRIMINATORY TREATMENT, AND VIOLATION OF BLACK LETTER LAW

Under *28 U.S.C. § 455(a)* and binding ADA precedent, a judge must act when faced with credible evidence that delay or silence is enabling the denial of federally protected accommodations. This Court failed that duty—not once, but twice. On *March 7, 2025*, the Court delayed ruling on Plaintiff's first emergency injunction, filed to prevent collapse, until after two collapses occurred, causing her traumatic brain injury. The second failure came after Plaintiff filed her *May 2* emergency motion, again pleading for urgent relief. Instead of acting, the Court granted Defendant's request for more time on *May 5*, pushing any response to *May 8*—just one day before Plaintiff's *May 9* hooding ceremony. Plaintiff had informed the Court that her family needed to know whether to travel from Connecticut to attend, and that participation in graduation was a required accommodation under federal disability law. The Court knew the consequences of delay. It chose to ignore them. The result was not error. It was *judicial complicity*.

**A. Why Plaintiff Cannot Seek or Accept a Stay: Ongoing Retaliation and Weaponization of Silence**

Plaintiff cannot request, agree to, or benefit from a stay of proceedings because the Defendant is continuing to retaliate against her and deny critical disability accommodations in real time. A stay would not pause the harm—it would shield the Defendant from accountability while ongoing ADA and DD Act violations continue unchecked. The harm is not hypothetical; it is active, compounding, and life-threatening.

Specifically, Plaintiff is being forced to choose between (1) worsening her medical condition by continuing to write legal pleadings through documented cognitive, visual, and memory impairments, or (2) surrendering her rights by remaining silent—knowing the Defendant will misrepresent that silence as waiver or non-opposition. Defendant has already done so. The

Court's May 13, 2025 Order treated Plaintiff's lack of response as consent, despite her documented traumatic brain injury, ER records, and prior filings stating she could no longer advocate for herself. This is not due process. It is attrition by design.

The Developmental Disabilities Assistance and Bill of Rights Act (DD Act), the ADA Title II, and Section 504 all prohibit forcing a disabled litigant into a choice between self-harm and forfeiture of federally protected rights. See 42 U.S.C. § 15001(c)(3); 28 C.F.R. § 35.130(b)(7); 29 U.S.C. § 794. Denial of access through procedural exhaustion or coerced silence is still a denial under federal law.

Defendant has already misused Plaintiff's disability to block Incompletes, obstruct her graduation, and alter procedural timelines while she was incapacitated. Every day that the Court refuses to act is another day where these violations continue—and another day where Plaintiff is forced to choose between survival and justice.

Therefore, Plaintiff has no legal, medical, or ethical option to seek a stay. The Court must either intervene now or become complicit in an ongoing civil rights violation.

**XXI. FAILURE TO INTERVENE IN FRAUD ON THE COURT VIOLATED JUDICIAL ETHICS AND RULE 11**

By *May 2, 2025*, the Court had received four formal ADA accommodation emails from Plaintiff, sent *April 18, 19, 22,* and *23* each documenting her post-concussion syndrome, seizure symptoms, and urgent need for Incompletes and deferred exams. These emails were specific, legally grounded, and included updated medical documentation. See Exhibit C-E

In one email, Plaintiff asked:
*"Please let me know what steps I should take… including an incomplete, as part of the interactive process."*
In another:
*"I am urgently requesting a real person, someone willing to help me navigate what I need to do to graduate in May."*

Plaintiff's *May 2* court filing, titled *"Plaintiff's Notice to the Court: Ongoing Abuse, Medical Harm, and Judicial Complicity,"* stated:
*"Since April 18, I have sent four formal, documented pleas… Not one of those emails has received a response."*
*"I begged for: Incomplete grades… Confirmation I can participate in graduation… Deferrals for final exams."*

The record also included the *April 10, 2025* doctor's letter, which diagnosed post-concussion syndrome and formally requested:

- *"Incompletes in all current courses,"*
- *"Remote access to course materials,"* and
- *"Temporary relief from exam obligations."*

Despite this, the Court took no action to stop the harm. Instead, it issued a *May 2* Minute Order directing the parties to "meet and confer," while allowing the Defendant to file a pleading that contradicted the record.

See Exhibit H **On May 6,** ARC Director Pamela Butler misleadingly claimed: *"Incompletes and graduation are not run through the ARC office… Dean Gilmore was working with you on your incomplete directly."* But this was false. Aug 18 email, **told Plaintiff to contact Dean Brookes and stated that accommodations must go through ARC.** Plaintiff followed those instructions and re-engaged ARC and Dean Brookes, who then failed to act and ignored all emails.

Defendant's claim that Plaintiff had not communicated with Gilmore was knowingly false, and

Butler's attempt to shift responsibility away from ARC directly contradicted the documentary record. This email made clear that *ARC had abdicated its legal role*, and that Co-Defendant General Counsel *Avis Russell*—who is not an ADA coordinator and has no medical expertise—*illegally took over the accommodation process and denied it outright*. Russell has a documented history of hate and obstruction: she was previously enjoined in *2022* for ADA violations in this same case, when a different judge granted emergency relief after Russell unlawfully interfered with access. Her continued control over accommodations, and her retaliation following that loss, are unlawful. The ADA does not permit university litigation counsel to override medical documentation or circumvent disability coordinators. Yet that is exactly what happened, and this Court let it stand.

The Defendant had already received all the relevant emails and the doctor's letter. The Court had also been served with all of it on or before *May 2*. The falsehoods in *ECF No. 63* were not misunderstandings; they were *deliberate*. Judge Nichols took no action to strike the filing or investigate the misrepresentations. The Court permitted the record to reflect a knowingly false claim that Plaintiff had not sought help, when in fact she had pleaded for it multiple times. This *judicial inaction enabled a false narrative* and allowed the denial of federally protected accommodations.

**B. MAY 5 EXTENSION VIOLATED THE COURT'S DUTY TO ENSURE MEANINGFUL ACCESS UNDER THE ADA**

**On *May 5, 2025***, the Court issued the following Minute Order:
*"It is hereby ORDERED that the [61] Motion for Extension of Time is GRANTED and that, on or before May 8, 2025, the parties shall meet and confer and file a Joint Status Report as required by the Court's May 2, 2025 Minute Order."*

This decision was made after the Court had received Plaintiff's sworn *May 2* filing, which clearly stated that Plaintiff had already submitted four accommodation requests and had been ignored. The Court also knew that Plaintiff had submitted a doctor's letter on *April 10*, and had contacted Defendant's attorney again on *May 4* asking to resolve the matter before the deadline. Judge Nichols *chose* to grant more time, knowing that final exams and graduation were imminent, and that delay would ensure Plaintiff could not receive Incompletes, defer exams, or participate in the hooding ceremony. See Exhibit G

The *May 5* extension functioned as a *constructive denial* of Plaintiff's rights. It rendered her requested relief unattainable. As a direct result of the Court's decision, denied access to participate in graduation ceremonies. This delay also harmed Plaintiff's family, who had made travel plans to attend the ceremony and were forced to cancel those arrangements with financial loss and emotional impact.This was not a neutral scheduling order. It was a *judicial decision that ensured failure*. The Court turned administrative delay into the *functional denial of federally protected rights*.

**C. ARC DIRECTOR BUTLER'S OBSTRUCTION, DECEIT, AND MEDICAL ENDANGERMENT (APRIL 1–MAY 6)**

The following record of misconduct by ARC Director Pamela Butler, documented in Plaintiff's real-time emails and medical submissions, illustrates not only systemic ADA violations by the University, but also this Court's sustained refusal to intervene. That refusal, despite direct warnings and verified documentation of escalating harm, raises a reasonable question of impartiality under 28 U.S.C. § 455(a) and justifies recusal. ARC Director Pamela Butler did not merely delay accommodations, she denied them by ignoring them. She refused to respond to

repeated, documented requests. She failed to engage in the interactive process. She withheld responses during an active medical crisis. And she later lied to the Court to conceal it. Butler made clear that she was acting under the direct direction of General Counsel Avis Marie Russell, individuals who had already retaliated against Plaintiff in a prior emergency injunction ADA case. Butler's actions were not passive delay, they were active denial through silence, carried out on instruction from senior university officials. Her conduct violated the ADA, Section 504, and 28 C.F.R. § 35.130(b)(1)(vii), which prohibits delegating accommodation decisions to non-qualified or biased actors. The Court allowed this pattern of obstruction, even after it was entered into the record. On April 3, 2025, during a recorded meeting, Plaintiff told ARC Director Pamela Butler that she needed remote or recorded access for all classes, and that absences should not count against her because of the collapse she suffered at the law school on March 28. She explained that her neurological symptoms were worsening, that she was in constant physical pain, and that light and overexertion were triggering collapse. Her doctors had already warned UDC in writing that forcing her to attend in person could result in brain injury, seizures, or death. She made clear that she could not keep attending in person and urgently needed the accommodation in all classes not some. Butler acknowledged the request and said she would consult Dean Gilmore, confirming that ARC had the authority to act. OnApril 4, Butler issued a full denial, even after this Court had acknowledged on March 28 that Plaintiff's request was reasonable. Butler denied remote access, and any protection from attendance penalties, even for 3-hour classes that Plaintiff's medical documentation had identified as medically dangerous. She falsely claimed the denial was based on "law school policy" and missing documentation, despite having already received multiple doctor's letters and emergency room records, including a

February 27 physician's letter warning that the school's refusal to accommodate could cause Plaintiff to suffer brain injury, seizures, or death. Plaintiff was never informed of this denial. There was no written response, no communication, and no attempt to explain ARC's position. Plaintiff was simply ignored. She continued submitting documentation and pleading for help. ARC went silent, and no one told her the accommodation had been rejected. Despite everything in the record, medical documentation, a prior collapse, and clear warnings, nobody treated Plaintiff's situation as urgent. Not ARC. Not the Defendant. Not the Court. Every single day of delay caused her further harm. Her symptoms worsened. Her collapse risk increased. And still, the school refused to implement basic accommodations. Plaintiff wrote that she could not safely continue. She said the situation was dangerous. She asked for help. No one did anything.

**On April 6, Plaintiff sent a deeply personal and urgent email warning:**

*"I remain deeply concerned about the risk of further injury—or even death—if this issue is not addressed. [...] Passing out on March 28 at the law school was devastating [...] I want to* emphasize that my doctor warned UDC on February 27 that this could occur if accommodations were not provided, and it did." - See Exhibit B

Attorney Anessa Abrams knowingly told the Court that no such request was made, a statement that constitutes material perjury under 18 U.S.C. §§ 1621 and 1623. Doe disclosed her mental health condition and explained that she could not fill out additional forms due to cognitive disability. She asked for someone to help her navigate the process, an ADA-protected request. Butler never responded. On April 9, Butler finally approved remote access, but by then it was too late. Plaintiff was already sitting in class that morning. Between 10:00 a.m. and 11:00 a.m., she was seen crying in class and in the hallway, visibly in distress and unable to cope with the light, noise, and physical strain. No one from ARC followed up. No implementation plan was sent. No

professors were contacted. Hours later, Plaintiff collapsed again. 911 was called. She was removed from the law school in a state of medical crisis, exactly as her doctors had warned, and exactly as she herself had pleaded to prevent. After the first collapse on March 28, Plaintiff had already told the Defendant and this Court that every written interaction caused her pain, and that she could no longer advocate for herself. She warned repeatedly that she was medically unsafe. She told ARC that she feared for her life. The Defendant ignored her. The Court blamed her. Even as emails and medical records proved her right, this Court chose to believe the Defendant's lies and disregard the record. Beginning April 18, Plaintiff began sending additional requests to ARC and the Law School, now asking for Incompletes due to worsening symptoms. She submitted more documentation and clarified that she was not refusing to complete her work but needed medical time to recover and continue. These requests went to Pamela Butler, Dean Brookes, and Dean Gilmore. No one responded. This sequence is not a misunderstanding, it is a cover-up. On April 4, Butler personally denied Plaintiff's remote access request. Beginning April 18, Plaintiff submitted additional medical documentation and formally requested Incompletes, copying Butler and Brookes. No one responded. Then on May 6, Butler attempted to rewrite the record entirely, claiming ARC was not responsible for Incompletes and suggesting that Dean Gilmore was handling it directly. That was a lie. ARC only had full authority over "Incompletes Accommodations", andGraduation ceremony accommodations as confirmed by Dean Gilmore's own email, "Accommodations only can come from ARC." Defendant Attorney March 28 hearing said "accommodation only comes from ARC." Butler's May 6 statement was not just false, it was an attempt to conceal legal violations, avoid accountability, and mislead this Court. Butler obstructed accommodations, ignored written warnings, rerouted ADA decisions to a hostile legal

actor, failed to implement her own approvals, and then lied to the Court to cover it up. The result was not just exclusion from graduation, it was catastrophic brain injury and preventable medical trauma. This was not miscommunication. It was discrimination, gaslighting, and dereliction of legal duty, by both ARC and counsel for the Defendant. The Defendant repeatedly lied to the Court, claiming it had not received Plaintiff's medical documentation. But the record proves otherwise. Defendant had in its possession: the September 2024 doctor's letter, the November 2024 emergency room report, the March 29, 2025 ER record, the April 6 medical referral to a brain injury clinic, the April 9 ER report after Plaintiff collapsed on campus, and the April 10 internal doctor letter recommending Incompletes. These documents were not just attached as exhibits—they were quoted and inserted directly into the pleadings, and in at least one instance, Plaintiff placed an actual image of the email into the filing, showing the exact attachment and date received. The Defendant submitted knowingly false statements in court filings, including on May 6, when counsel denied receiving documents they already had. They lied anyway, because the Court allowed it. The Court said nothing. It never acknowledged the documentation, never corrected the falsehoods, and never held the Defendant accountable. The Defendant lies with impunity because this Court does not care. And the result has not only been exclusion, obstruction, and humiliation, it has been permanent neurological harm, caused not only by the Defendant's misconduct, but by the Court's refusal to stop it.

### XXII. Final Harm: Graduation Is Over. The Court Delayed, Denied, and Repeatedly Believed Falsehoods Until It Was Too Late

The ultimate injury caused by this Court's misconduct is now permanent: **Graduation is over**, and I was excluded—not because I failed to earn my degree, but because this Court failed to act.

What happened was not an oversight. It was the foreseeable and preventable result of judicial delay, bias, and the Court's repeated acceptance of falsehoods over fact.

This Court had every opportunity to intervene. It had:

- My **February 27, emergency accommodation request** for remote access;
- My **March 6, Emergency Preliminary Injunction motion**;
- The **March 28,** told the Court I had just hit my head;
- My **April 10 doctor's letter**, which explicitly stated I was getting worse due to concussion and seizures, and warned against continuing without proper accommodations;
- My **April 9 collapse**, while still being forced to litigate;
- My **second Emergency Motion for Graduation Access**, filed while a remedy was still possible.

The Court's May 5 order—issued while I was already in documented neurological crisis—forced me to continue drafting legal pleadings against direct medical advice, which prohibited exertion and cognitive stress. As a result, I missed two critical doctor's appointments on May 5 and May 7, and by May 5 through May 8, I was in such extreme pain that I could not physically move without triggering worsening neurological symptoms. The order caused a rapid decline in my condition. This was not a minor oversight—it was a court-imposed medical injury, inflicted after weeks of ignored warnings and withheld relief. The harm was predictable. It was preventable. And this Court caused it. I repeatedly informed the Court of my condition, yet it compelled me to self-advocate while disabled and suffering. And yet, the Court waited until after graduation had passed to never ruled at all on the second emergency motion. This was not just delay. It was abandonment. The harm was compounded by legal error at the threshold. The Defendant removed this case after the 30-day deadline under 28 U.S.C. § 1446(b)(1). Their removal was

untimely and based on a knowingly false claim about the date of service. This Court accepted that lie and wrongly denied remand, assuming jurisdiction it never legally had. That jurisdictional error directly enabled the harm that followed. Had this case remained in D.C. Superior Court, I would never have suffered the March 28 and April 9 traumatic brain injuries caused by being forced to litigate under medical crisis.

In 2022, during an emergency preliminary injunction hearing in D.C. Superior Court involving the same Defendant and the same attorney, Anessa Abrams stood in open court and lied, claiming I had not responded to her emails. That was false. I had responded immediately, multiple times across the same day. I submitted the emails as proof, and the Superior Court judge held her accountable. The judge reviewed the evidence, challenged Abrams directly, and made clear that her dishonesty would not be tolerated. I was treated with respect. The record was honored. That judge upheld the law.

In this Court, the same attorney told the same lies—but the outcome was the opposite. Judge Nichols accepted those lies as fact, despite the record proving otherwise. He repeated those lies in open court and in his rulings, ignoring sworn declarations, timestamped emails, and exhibits showing I had sent detailed medical documentation and urgent accommodation requests. This Court acted not just as a passive observer—but as a mouthpiece for the Defendant's false narrative. There is no dispute. The evidence exists. The lies are documented. The truth is in the record. But here, unlike in 2022, the truth did not matter. Whether this bias arises from my pro se status, my disability, or another protected class characteristic, the result has been the same: this

Court disregarded the facts, elevated lies over law, and allowed me to be medically and legally harmed.

Worse, the Court then:

- Repeatedly accepted the Defendant's false claims as fact, including statements about my medical documentation, timeline of requests, and engagement with ARC;
- Ignored overwhelming contradictory evidence, including timestamped emails, sworn declarations, and direct quotes from Defendant's own staff;
- Dismissed my pro se status, treating me as a burden instead of a civil rights litigant with a known cognitive disability;
- Refused to protect my legal right to accommodations, allowing graduation to pass while I was still actively seeking relief.

As a result, I lost my only opportunity to graduate. I lost money, memories, professional closure, and the basic dignity of finishing law school alongside my peers. I earned the right to walk. I had the credits, the documentation, the accommodations requests, and the law on my side. What I didn't have was a neutral court.

The harm was compounded by legal error at the threshold. The Defendant removed this case after the 30-day deadline under 28 U.S.C. § 1446(b)(1). Their removal was untimely and based on a knowingly false claim about the date of service. This Court accepted that lie and wrongly denied remand, assuming jurisdiction it never legally had. That jurisdictional error directly enabled the harm that followed. Had this case remained in D.C. Superior Court, I would never have suffered the March 28 and April 9 traumatic brain injuries caused by being forced to litigate under medical crisis.

In 2022, during an emergency preliminary injunction hearing in D.C. Superior Court involving the same Defendant and the same attorney, Anessa Abrams stood in open court and lied, claiming I had not responded to her emails. That was false. I had responded immediately—multiple times across the same day. I submitted the emails as proof, and the Superior Court judge held her accountable. The judge reviewed the evidence, challenged Abrams directly, and made clear that her dishonesty would not be tolerated. I was treated with respect. The record was honored. And I was granted partial relief. That judge upheld the law.

**A. Same Lies, Different Judges—Only One Protected My Rights**

Attorney Abrams told the same lies, with a Superior Court Judge, but the outcome was the opposite. Judge Nichols accepted those lies as fact, despite the record proving otherwise. He repeated those lies in open court and in his rulings, ignoring sworn declarations, timestamped emails, and exhibits showing I had sent detailed medical documentation and urgent accommodation requests. This Court acted not just as a passive observer, but as a mouthpiece for the Defendant's false narrative. There is no dispute. The evidence exists. The lies are documented. The truth is in the record. But here, unlike in 2022, the truth did not matter. Whether this bias arises from my pro se status, my disability, or another protected characteristic, the result has been the same: this Court disregarded the facts, elevated lies over law, and allowed me to be medically and legally harmed.

**X. Compounding Violations Requiring Immediate Recusal Under 28 U.S.C. § 455(a)**

This Court had the power—and the duty—to protect a disabled litigant from irreparable harm. Instead, it enabled that harm, knowing the consequences. By May 2, 2025, the Court had been informed that Plaintiff was experiencing permanent neurological symptoms following two

documented collapses at the law school. She had submitted four separate accommodation emails (April 18, 19, 22, and 23), a doctor's letter on April 10 formally diagnosing post-concussion syndrome and requesting Incompletes, remote access, and deferrals for final exams. Her filings explicitly stated that she was under active medical supervision, undergoing **speech therapy, vision therapy, physical therapy**, and experiencing **depressive and cognitive symptoms** that made it impossible to keep advocating for herself. She warned that writing motions was causing physical harm. She told this Court she could not keep up with the docket and had missed doctors appointments as a result. She also explicitly stated that, beginning March 29, she was no longer able to read or comprehend the Defendant's filings due to cognitive impairment caused by her brain injury. Most of Defendant's filings from that point forward were never read at all. Both the Court and the Defendant knew this, and yet continued to treat her silence as if she had consented or waived her rights, further weaponizing her disability against her. Instead of offering relief or modifying procedures under the ADA, the Court and Defendant exploited this incapacitation—filing motions they knew she could not answer, treating silence as waiver, and using procedural rules to block her access to graduation and exams. The May 12 and May 13 orders are not just failures of diligence—they are direct examples of how the Court and Defendant coordinated to weaponize Plaintiff's disability against her.

The Court ignored all of it. On **May 5**, it granted Defendant's motion for an extension, pushing the parties' response deadline to **May 8**—just **one day before** Plaintiff's scheduled law school graduation. On **May 12**, the Court issued a formal **Order denying Plaintiff's motion to appoint counsel** (ECF No. 65), again failing to mention Plaintiff's April 9 collapse, her TBI diagnosis, or her written warnings that she could no longer safely represent herself. On **May 13**, the Court

granted the **Defendant's motion for extension** as "unopposed," despite knowing from Plaintiff's prior filings that she was medically incapacitated and unable to respond to deadlines. The Court treated that silence as consent.

These rulings show not neutrality—but complicity. The Court had direct evidence that Plaintiff was under neurological care, warned that advocacy was physically dangerous, and that she needed immediate relief to avoid being excluded from her May 8 and May 9 ceremonies. It did nothing. The result was not procedural error. It was the predictable denial of access and permanent medical harm.

**A. The May 2 Motion Was Never Ruled On, Enabling Exclusion From Graduation**

The emergency motion filed on **May 2, 2025**, titled *"Ongoing Abuse, Medical Harm, and Judicial Complicity,"* was not just a graduation request—it was a formal notice that Plaintiff had already submitted four accommodation emails, had not received a response, and was in medical crisis. The Court had all relevant documentation: her April 10 doctor's letter, the April 9 collapse, and multiple filings documenting speech, vision, and physical therapy. Yet the Court never ruled on the motion. Instead, it extended deadlines for the Defendant and issued a May 12 denial of counsel that made no mention of Plaintiff's medical condition.

Under 28 C.F.R. § 35.130(b)(7), public institutions and courts must modify procedures to avoid disability-based exclusion. The Court's refusal to act made Plaintiff's exclusion from both ceremonies inevitable. This was not merely delay. It was the constructive denial of federally protected rights.

**B. The May 12 and May 13 Orders Ignored Medical Incapacity and Enabled Falsehoods**

In its **May 12, 2025 Order**, the Court denied appointment of counsel without a single reference to Plaintiff's traumatic brain injury, medical records, or her statements that she could no longer advocate for herself. This omission is indefensible. The record was saturated with documentation —ER visits, therapy updates, doctor's letters, and filings that warned of Plaintiff's inability to engage.Worse still, on **May 13**, the Court granted the Defendant's motion as "unopposed," despite knowing Plaintiff had informed the Court that she was incapacitated and not consenting. The Court accepted this "non-opposition" as legally valid, furthering the Defendant's false narrative that Plaintiff was simply noncompliant, rather than medically unable.

A judge may not ignore a litigant's disability and pretend silence is procedural agreement. That is not impartiality—it is systemic bias. As the Supreme Court held in *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), due process demands recusal when the risk of actual bias becomes intolerable. This Court's rulings show deliberate indifference to Plaintiff's rights and an active preference for Defendant's false narrative.

**C. Judicial Inaction Caused Permanent Harm and Violated Federal Law**

Plaintiff missed her graduation. Her family canceled travel plans. She was excluded from the May 8 and 9 ceremonies she had earned—**not because she failed to meet requirements, but because this Court refused to enforce the law**. The ADA guarantees equal access to education and public services. *Winter v. NRDC*, 555 U.S. 7, 24 (2008), requires emergency relief when irreparable harm is likely. The Court was fully aware of that harm and chose silence. That silence was not neutral. It was discriminatory.

**D. New Violations Reflected in the May 12 and May 13 Orders**

The May 12 and 13 orders introduce new, discrete violations of Plaintiff's federal rights and procedural protections:

1. **The May 12 Order Denied Appointment of Counsel Without Citing a Single Fact.** The Court made no factual findings and failed to acknowledge Plaintiff's well-documented disability. This is a due process violation, as it denied Plaintiff's request without considering her actual cognitive and physical condition.
2. **The May 13 Order Treated Silence as Waiver Despite Documented Incapacitation.** Plaintiff had already informed the Court she could not respond to deadlines due to her TBI. By treating her silence as opposition waived, the Court applied a standard that penalizes disability in direct violation of 28 C.F.R. § 35.130(b)(1)(vii).
3. **Both Orders Demonstrate Intentional Omission of Disability Evidence.** Neither ruling references any medical facts in the record. This creates a pattern of intentional exclusion of disability-related evidence from formal judicial orders, reinforcing that this Court is not neutral, but is actively suppressing the disability context to justify denial.

**E. The Court Ignored Defendant's Failure to Engage in the Interactive Process and Provide Required Denials**

Plaintiff's Motion for Sanctions details how the Defendant, through ARC and legal counsel, repeatedly failed to engage in the interactive process and never issued written denials as required by law. Plaintiff submitted four documented ADA accommodation requests between April 18 and April 23, along with an April 10 doctor's letter recommending Incompletes and remote access. Yet ARC Director Pamela Butler did not respond to any of these requests. No written denials were issued. No interactive process was initiated. The Defendant's conduct violated 28 C.F.R. §

35.130 and controlling DOJ guidance requiring prompt, individualized, and documented responses to accommodation requests.

The Court ignored this. It never required the Defendant to explain or justify its failure to engage. Instead, the Court blamed Plaintiff—adopting the defense's false argument that she had failed to "recertify" or follow procedure, despite having submitted multiple emails and formal medical records. The Court's refusal to acknowledge this breakdown in the interactive process enabled ongoing ADA violations and caused Plaintiff to miss critical deadlines, exams, and graduation access.

This is not mere error. It is judicial endorsement of unlawful conduct. The Court's silence functioned as complicity, and recusal is now required.

**XXIII. Additional Judicial Misconduct: Timeline Manipulation, Perjury by Officials, and Refusal to Appoint a Guardian Ad Litem**

In addition to the grounds already established, this Court's conduct raises further independent bases for disqualification based on judicial misconduct, obstruction, and failure to protect a disabled litigant entitled to statutory safeguards under the ADA, the DD Act, and the D.C. Human Rights Act.

**A. Judicial Endorsement of a Falsified Timeline**

The Court repeatedly adopted and ruled based on timeline representations submitted by the Defendant that were provably false. Plaintiff's emails, attachments, and prior declarations—show that ARC Director Pamela Butler and defense counsel deliberately omitted Plaintiff's April 6–8 communications, denied the existence of key April 10–11 doctor documentation, and claimed that "no further requests" were made after April 4. These were not omissions—they were **fabrications**, disproven by timestamped exhibits. Judge Nichols adopted those

misrepresentations as fact and incorporated them into minute orders and rulings without correction, creating a court-endorsed false timeline that harmed Plaintiff's rights and legal position. The timeline falsification was especially egregious in the period after Plaintiff was discharged from the hospital following her April 9 collapse. Between April 18 and May 5, Plaintiff sent multiple documented follow-up emails to ARC and university officials requesting Incompletes, emergency support, and clarification on accommodations. These communications were timestamped, medically grounded, and formed the factual core of her May 2 emergency filing. Yet the Defendant falsely claimed—and the Court accepted—that Plaintiff had made no further requests after April 4. This deliberate omission erased weeks of correspondence and distorted the record to justify inaction. The Court's adoption of that false narrative not only discredited Plaintiff's disability claims, but also erased the documented efforts she made to obtain Incompletes, a prerequisite to graduating. By accepting the Defendant's false assertion that no further requests were made after April 4, the Court legitimized the University's refusal to process her outstanding coursework. Without Incompletes, Plaintiff was blocked from graduating and therefore excluded from both the May 8 hooding and May 9 commencement ceremonies. Plaintiff had explicitly requested a commencement ceremony accommodation so she could participate in graduation remotely due to her documented medical condition. Those requests were ignored by the Defendant and entirely omitted from the procedural record presented to the Court, further reinforcing the false narrative that Plaintiff had failed to seek assistance. The Court further enabled this false narrative by repeatedly granting the Defendant's requests for extension —including a May 5 extension that delayed all filings until May 8—effectively ensuring that no ruling would be issued on Plaintiff's emergency accommodation motion before the May 8 and 9

graduation ceremonies. By allowing the Defendant to run out the clock, the Court helped facilitate Plaintiff's exclusion while knowing she had requested remote access as a graduation accommodation. Because the University refused to process her Incompletes, Plaintiff was unable to graduate or participate in the May 8 and 9 ceremonies, despite having completed the academic work and meeting all substantive requirements.

**B. Perjury by Pamela Butler and Dean Brookes Ignored by the Court**

ARC Director Pamela Butler's May 6, 2025 statement to the Court falsely claimed that Dean Gilmore—not ARC—handled Incompletes, contradicting Gilmore's own email and ARC's published procedures. Similarly, Dean Brookes submitted a sworn declaration stating Plaintiff had "not followed proper procedure" and denied knowledge of Plaintiff's emergency condition—statements refuted by emails, witness declarations, and the February 21 classroom transcript. These are not misunderstandings. They are **knowingly false sworn statements**. The Court took no action to strike these declarations, investigate their veracity, or uphold the truth-seeking function of the judiciary. The Court's silence amounts to complicity in perjury.

**C. Failure to Appoint a Guardian Ad Litem or Next Friend**

Under the Developmental Disabilities Assistance and Bill of Rights Act (DD Act) and binding Supreme Court precedent (*Whitmore v. Arkansas*, 495 U.S. 149, 163–64 (1990)), courts have an obligation to protect litigants with developmental or neurological impairments that interfere with self-advocacy. Plaintiff repeatedly stated in her filings that she was unable to process legal documents, draft motions, or understand Defendant's filings following her March 28 and April 9 collapses. These impairments were documented in the record through ER reports, therapy records, and multiple sworn filings. Despite this, the Court neither paused proceedings nor

appointed a guardian ad litem or next friend to assist. This failure constitutes a direct violation of the DD Act, deprives Plaintiff of procedural due process, and demonstrates reckless indifference to her disability rights.

Together, these additional facts underscore that the judicial misconduct in this case was not confined to one moment or one ruling. It was systemic. It was informed. And it was destructive. These failures independently justify recusal under 28 U.S.C. § 455(a) and further warrant referral for judicial discipline.

**CONCLUSION**

Despite repeated warnings of medical crisis, a documented brain injury, and explicit written requests for an ADA coordinator, appointment of counsel, or referral to the Court's disability accommodations office, this Court refused every request for support. Instead, Judge Carl J. Nichols issued abusive orders requiring me to continue writing legal pleadings—knowing that each round of writing was medically triggering collapses. I collapsed immediately after filing motions on March 28, April 9, May 5, and May 7. These were not coincidences. These were predictable, preventable medical emergencies caused by the Court's refusal to follow disability law. Judge Nichols did not just ignore my condition, he weaponized it. He forced me to advocate while impaired, punished me for procedural confusion caused by my TBI, and treated my disability as a nuisance rather than a legal right. This is not judicial neutrality. This is sustained, documented, life-threatening judicial abuse. And it continues to this day. The facts are undisputed: I submitted four accommodation requests between April 18 and April 23. I submitted a doctor's letter on April 10. I filed a sworn motion on May 2 detailing the emergency. I

contacted opposing counsel on May 4. The Defendant lied to the Court on May 6. And Judge Nichols did nothing. The result was not just the loss of accommodations—it was the destruction of my semester, my exclusion from graduation, and permanent academic and professional harm. This sequence violates the ADA, Section 504, due process, and the basic requirements of judicial impartiality.

By knowingly allowing provable falsehoods to block emergency relief, this Court became complicit in retaliation, obstruction, and discrimination. This is not a routine legal error. It is judicial misconduct under 28 U.S.C. § 455(a).

- No reasonable observer could see this conduct as fair or neutral.
- And no disabled litigant could trust this Court to uphold the law, let alone protect their rights.
- This is not impartiality—it is judicial complicity in discrimination.
- It is a failure of duty, a violation of law, and a betrayal of the public trust.
- And the consequence is not abstract. It has left me permanently injured.

I am no longer simply litigating against the University—I am defending myself against a federal judge whose actions have become indistinguishable from those of the Defendants.

This filing was made under extreme physical and cognitive distress. I am not a lawyer. I am a disabled litigant with a diagnosed traumatic brain injury, speech and vision impairments, and a doctor-ordered restriction on cognitive exertion. The act of drafting this motion has caused me pain, worsened my symptoms, and forced me to miss essential therapy appointments. I included a detailed Appendix and exhibits not because I am confused—but because this Court continues to ignore the medical crisis unfolding before it. If this motion appears disorganized, it is because I

am injured. And if the Court chooses to dismiss this filing based on formatting rather than substance, that will only confirm that judicial bias—not legal clarity—is driving this proceeding.

Judge Nichols did not just allow discrimination to unfold; he became its instrument. Even after I suffered a traumatic brain injury—documented by ER records, therapy referrals, and medical orders to rest—he denied my request for a court-appointed attorney or guardian, despite his duty under the DD Act to protect cognitively impaired litigants. In therapy, I have to process not only the harm caused by my school, but also the trauma of being gaslit and overruled by a federal judge while medically incapacitated. Every time I tried to protect myself, the Court sided with those who ignored me, misrepresented my words, or denied my condition. At this point, the judge is not an independent adjudicator. He is a co-author of the harm. A co-defendant in effect —because his rulings enabled and worsened the abuse I suffered, both physically and psychologically. That is not justice. That is complicity.

**Recusal is not optional. It is required.**

**LEGAL NOTICE OF MEDICAL DANGER AND DUE PROCESS VIOLATION SUBMITTED UNDER PROTEST PURSUANT TO THE DUE PROCESS CLAUSE, THE ADA, AND SECTION 504**

Plaintiff hereby provides legal notice that the Court is actively endangering her life in violation of federal disability law, due process rights, and multiple physician directives.

Despite providing detailed medical documentation from multiple doctors and emergency rooms —explicitly stating that Plaintiff is not medically cleared to read, write, or advocate on her own behalf due to a worsening traumatic brain injury (TBI)—the Court has refused to appoint counsel, refused to stay proceedings, and continues to require written filings under threat of

waiver or dismissal. Each word Plaintiff is forced to read or write causes extreme eye pain, vision loss, cognitive deterioration, and neurological risk. Plaintiff's doctor has confirmed that her condition is deteriorating and that writing pleadings is dangerous and medically prohibited.

Plaintiff has collapsed multiple times over the past two weeks while attempting to write this motion. She has missed urgent medical appointments due to these filings. The Court has made no accommodations, despite its legal obligations under the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act, and the Due Process Clause of the U.S. Constitution.

The Court's refusal to act on Plaintiff's requests for counsel and emergency accommodation—combined with its ongoing acceptance of proven falsehoods by Defendant's counsel—has directly contributed to Plaintiff's traumatic brain injury on March 28 and her near-fatal collapse on April 9. The Court has continued this pattern by treating Plaintiff's inability to respond as "agreement" or "silence," despite being on notice that she is medically barred from responding. The Court is now actively enabling further retaliation by the Defendant, who falsely claims Plaintiff "agrees" to their motions—when in fact she has been incapacitated and repeatedly objected in writing.

This is no longer a legal oversight. It is a life-threatening abuse of judicial power. Plaintiff hereby notifies the Court:

**If I die, it will be because this Court refused to follow the law.**

This is not hyperbole. This is a final legal warning. The Court's continued refusal to grant accommodations, stay proceedings, or appoint counsel while requiring written pleadings from a

disabled, cognitively impaired litigant constitutes deliberate indifference and reckless disregard for Plaintiff's life.

Respectfully submitted under protest,

**PRAYER FOR RELIEF**

For the reasons stated above, Plaintiff respectfully moves for the immediate recusal of Judge Carl J. Nichols under 28 U.S.C. § 455(a) due to sustained physical harm, documented judicial bias, unlawful disregard of federal disability law, and active endorsement of Defendant's false statements. This Court has failed to timely rule on **two separate Emergency Motions for Preliminary Injunction** filed in response to imminent medical danger and irreparable academic harm. As a direct result of these delays, Plaintiff collapsed multiple times, was excluded from graduation, and suffered permanent neurological damage. Such inaction violates the ADA, Section 504, and the Due Process Clause.

Plaintiff expressly reserves the right to seek a writ of mandamus from the D.C. Circuit under 28 U.S.C. § 1651(a) should the Court continue to withhold rulings or continue denying disability-based relief.

**Plaintiff respectfully requests that:**

1. Judge Nichols be immediately recused from this case;
2. A new impartial judge be assigned;
3. All pending motions, including Plaintiff's **March 31, 2025 and April 20, 2025 Emergency Motions for Appointment of Counsel** due to traumatic brain injury, and the May 2, 2025

Emergency Motion, all of which are currently being ignored, be stayed pending reassignment.

Respectfully submitted,

/S/

______________

Jane Doe
Pro Se Plaintiff
4301 50th Street, NW, Suite 300 #1140
Washington, DC 20016
jane.doe2023a@gmail.com
Dated: May 18, 2025

**CERTIFICATE OF SERVICE**

I hereby certify certify that, on May 18, 2025, a copy of the attached PLAINTIFF MOVES TO RECUSE JUDGE CARL J. NICHOLS FOR KNOWING VIOLATIONS OF DISABILITY LAWS THAT CAUSED PLAINTIFF'S TRAUMATIC BRAIN INJURY was filed and served through the court's electronic filing system to: Anessa Abrams aabrams@fordharrison.com FordHarrison LLP 2000 M Street, N.W. Suite 505 Washington, DC 20036.

/S/

____________________

May 18, 2025